**In re INTERNATIONAL HORIZONS, INC., Debtor.**

**In re INTERNATIONAL HORIZONS (CURACAO), N.V., Debtor.**

**In re NORTH AMERICAN EXPORTS, INC., Debtor.**

**In re INTERNATIONAL HORIZONS, N.V., Debtor.**

**In re WORLD OF ENGLISH, N.V., Debtor.**

**In re COMMUNICATION & STUDIES INTERNATIONAL, LTD., Debtor.**

**In re FINANCIAL RESOURCES K.K., Debtor.**

Bankruptcy Nos. 81–01231A, 81–01232A, 81–01233A, 81–01234A, 81–02822A, 81–02823A and 82–00404A.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

June 2, 1983.

David G. Bisbee, Robert A. Parker, Bisbee & Parker, Robert M. Fink, Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., for petitioner.

Randall M. Roden, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for respondent.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

This case is before the Court on the debtors' Motion for Summary Judgment and on the May 6, 1983 cross-Motion for Summary Judgment filed by the United States of America, by and through its agency, the Internal Revenue Service ("the Service") with respect to the debtors' March 25, 1983 objection to certain proofs of claim. Initially, the Court notes that an objection to the allowance of a proof of claim is not equivalent to the commencement of an adversary proceeding. But see *In the Matter of Sims,* C82–1799A, (N.D.Ga., April 7, 1983). The Advisory Committee Notes to Rule 306(c) of the Rules of Bankruptcy Procedure clearly state that

> "The contested matter initiated by such an objection to a claim is governed by Rule 914, unless a counterclaim by the trustee is joined with the objection to the claim. The filing of a counterclaim ordinarily commences an adversary proceeding subject to the Rules in Part VII."

The comment to Bankruptcy Rule 306(c) under the 1978 Bankruptcy Code sets forth the fact that Rule 306(c) remains effective under the Code. Accordingly, this case is properly before the Court.

A brief review of the factual background of these proceedings as it relates to the matters now before the Court is in order. These reorganization proceedings were commenced on March 20, 1981 upon the filing of voluntary Chapter 11 petitions by International Horizons, Inc., International Horizons (Curacao), N.V., North American Exports, Inc., and International Horizons, N.V. Thereafter, on July 7, 1981, two affiliates of the original four debtors, World of English, N.V. and Communication & Studies International, Ltd., also filed for reorganization under Chapter 11 of the Bankruptcy Code. On February 1, 1982, another affiliate, Financial Resources K.K., filed its Chapter 11 petition. Throughout these proceedings, the debtors have operated their businesses as debtors in possession.

On June 17, 1981, pursuant to Rule 3001(b)(2)(B) of the Interim Bankruptcy Rules, adopted by this Court and applicable only to cases under Chapter 11 of Title 11 of the United States Code, this Court established August 31, 1981 as a bar date by which all creditors desiring to assert claims against International Horizons, Inc., International Horizons (Curacao), N.V., North American Exports, Inc., or International Horizons, N.V. were required to file their respective proofs of such claim. Notice of that Order issued to all creditors of the debtors, including the Service. The Service has not applied for an extension of time to file claims.

On May 18, 1981, and June 29, 1981, the Service filed timely proofs of claim as to the debtor, North American Exports, Inc. ("NAE"), asserting claims for withholding taxes and Federal Unemployment Tax Act ("FUTA") taxes. On May 18, 1981, the Service filed a timely proof of claim as to debtor, International Horizons, Inc. ("IHI"), asserting claims for withholding taxes for two quarterly tax periods. These proofs of claim were the only proofs of claim filed by the Service in the Chapter 11 proceedings of NAE and IHI on or before August 31, 1981.

On November 2, 1982, the Service filed a new proof of claim as to NAE, reasserting its earlier claims for withholding and FUTA taxes and adding a new claim for corporate income taxes for the taxable years 1974 and 1975 in the principal amount of $14,886,-908.00, plus interest, and penalties aggregating approximately $9,000,000.00. On November 18, 1982, the Service filed a new proof of claim as to IHI reasserting its earlier claims for withholding taxes, and also adding a new claim for corporate income taxes for the taxable year 1980 in the principal amount of $1,719,649.00, plus interest in the amount of $81,412.42.

The debtors have not objected to the May 18, 1981, and June 29, 1981 claims. Accordingly, these claims are deemed to be allowed pursuant to 11 U.S.C. § 502(a). The debtors have objected to the November 2, 1982 and November 18, 1982 claims to the extent that they assert claims against NAE and IHI for corporate income taxes. The

debtors base these objections on the ground that claims for corporate income taxes are untimely.

The question before the Court is whether the Service should be allowed to amend the May 18, 1981, and June 29, 1981, proofs of claim, which it filed timely as to the debtors, North American Exports, Inc. ("NAE") and International Horizons, Inc. ("IHI"), asserting claims for withholding taxes and Federal Unemployment Tax Act ("FUTA") taxes, by adding claims for corporate income taxes for the taxable years 1974 and 1975. The subject amendments were filed on November 2, 1982, and November 18, 1982, as to NAE and IHI, respectively.

Rule 914 of the Rules of Bankruptcy Procedure governs the procedure to be employed in contested matters. While Rule 914 does not specifically provide for the application of Rule 715 of the Rules of Bankruptcy Procedure to contested matters, Rule 914 does give the Court the discretion to "direct (at any stage in a particular matter) that one or more of the other rules in Part VII shall apply." The Court now makes Rule 715 of the Rules of Bankruptcy Procedure applicable to the contested matter before the Court.

Rule 715 of the Rules of Bankruptcy Procedure incorporates Rule 15 of the Federal Rules of Civil Procedure for determining when amendments to pleadings are to be allowed in bankruptcy cases. Generally, the Court is to grant liberally leave to amend a pleading under the Federal Rule of Civil Procedure 15(a). As the United States Supreme Court stated in *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the mandate that leave to amend shall be freely given when justice shall require it is to be heeded. However, the courts have limited the use of amendments to assert an entirely new claim. *In the Matter of Commonwealth Corp.,* 617 F.2d 415 (5th Cir.1980). With these general guidelines in mind, the Court will undertake

its analysis of whether to allow the Service to amend its May 18, 1981, and June 29, 1981, claims filed against NAE and IHI.[1]

Prior to commencing its analysis of this case, the Court notes that the bar Order entered in these cases was issued pursuant to Rule 3001(b)(2)(B) of the Interim Bankruptcy Rules, while all the cases on which the Court relies in this Order concerned acts which took place while § 57n of the Bankruptcy Act was in effect. The judicial establishment of a bar date is entitled to no less dignity than the statutory establishment of a bar date for the filing of proofs of claim in reorganization proceedings. Therefore, the Court, as have the debtors and the Service, will employ cases concerning amendments under § 57n of the Bankruptcy Act to aid in the determination of whether an amendment should be allowed in the case *sub judice.*

In its consideration of this case, the Court has observed two lines of decisions concerning when to allow amendments to proofs of claim in bankruptcy proceedings. The first trend in these cases, which may be termed traditional or conservative, allows an amendment to be filed in those instances where a new claim is not being asserted and where there is a timely proof of claim that has been filed which can be amended. These cases were not concerned with actual notice of the existence of a claim and generally held that notice alone will not suffice to allow the filing of an untimely proof of claim. The second line of cases takes a more liberal approach to determining whether to allow the filing of an amendment to a proof of claim and requires a balancing of competing interests based on the facts and circumstances of each case. The analysis which follows will address both the traditional and liberal approach to determining whether to allow amendments to proofs of claim.

---

1. The Service has not filed a separate pleading requesting that it be allowed to amend its May 18, 1981, and June 29, 1981 proofs of claim filed against NAE and IHI. However, it is clear that this is the Service's intent and the Court will treat the Service's cross-motion for summary judgment as containing a request for leave to amend the Service's timely filed and unobjected to proofs of claim.

■ Courts have recognized that withholding taxes and FUTA taxes, while a form of federal taxation, are not the same as income and profits taxes. *Shaw v. United States,* 331 F.2d 493 (9th Cir.1964); *In re Little & Ives Co., Inc.,* 68–1 USTC ¶ 9345 (B.C.S.D.N.Y.1968) at footnote 1. *Cf. Menick v. Hoffman,* 205 F.2d 365 (9th Cir.1953). This Court disagrees with the Service's contention that because federal taxes are of the same generic origin the Court should allow the amendment of withholding and FUTA taxes by adding corporate income taxes without further inquiry. The Service cites in support of this contention *Menick v. Hoffman,* 205 F.2d 365 (9th Cir.1953). While it is true that in *Menick* the Court allowed an amendment for income taxes to a proof of claim for withholding taxes, *Menick* is limited to its facts. In *Menick,* the bankrupt, Arthur Hoffman, was an individual and not a corporation. Withholding taxes in *Menick* as to the bankrupt's business had a dual identity of being income taxes as to the bankrupt individually. Accordingly, notice of withholding taxes for Hoffman's business also constituted notice to Hoffman individually of his income tax liability. The corporate income taxes in the instant case do not evolve from withholding or FUTA tax liabilities.

The determination that the filing of a proof of claim for one type of federal tax does not automatically provide a basis for an amendment to assert a claim for another type of federal tax does not end the Court's analysis of whether the IRS should be allowed to amend its proofs of claim against NAE and IHI. As the Court stated in *In the Matter of Commonwealth Corp.,* 617 F.2d 415 (5th Cir.1980),

"The reason for liberality in permitting a late-filed amendment to a proof of claim, subject to the restrictions described above, is that '[a] bankruptcy court ... sits as a court of equity, duty bound to examine each claim to see that injustice is not done and that all claims are fairly considered.' [cites omitted]. The Supreme Court described the equity powers of bankruptcy courts and the objectives of the use of said equity powers as follows:

'The bankruptcy courts have exercised these equitable powers in passing on a wide range of problems arising out of the administration of bankrupt estates. They have been invoked to the end that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done.' *Pepper v. Litten,* 308 U.S. 295, 304–05, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939) (footnote omitted)."

One criterion to be examined in allowing amendments to proofs of claim is whether the trustee had notice of the substance of the amendment which was to be asserted. As one commentator has stated in discussing Federal Rule of Civil Procedure 15(c):

"An approach that better reflects the liberal policy of Rule 15(c) is to determine whether the adverse party, viewed as a reasonably prudent man, ought to have been able to anticipate or should have expected that the character of the originally pleaded claim might be altered or that other aspects of the conduct, transaction, or occurrence set forth in the original pleading might be called into question." 6 Wright & Miller, *Federal Practice and Procedure* § 1497, at 499.

The policy of allowing amendments based on notice is exemplified in *Walsh v. Lockhart Associates,* 339 F.2d 417 (5th Cir.1964); Cert. Denied 380 U.S. 953, 85 S.Ct. 1085, 13 L.Ed.2d 970 (1965). In *Walsh,* the Court allowed a proof of claim to be filed late, treating it as an amendment even though there was no timely proof of claim filed which the creditor could have amended. The reason for this decision distinguishes *Walsh* from the case *sub judice* because in *Walsh,* the bankrupt, the trustee, the trustee's attorney, and the referee all had notice of the existence of the claim at issue therein, while the creditor was unaware of the debtor's change of name just shortly prior to the filing of its bankruptcy petition.

There is substantial authority which stands for the proposition that notice of a claim will not support the filing of an untimely proof of claim. For example, in *In the Matter of Paul R. Dean Co., Inc.,* 460 F.Supp. 447 (W.D.N.Y.1978), the Court held that the filing of a letter with a state court assignee for the benefit of creditors was not sufficient for a creditor to establish its claim in a bankruptcy proceeding. In *In the Matter of Vega Baja Lumber Yard, Inc.,* 285 F.Supp. 143 (D.P.R.1968), the Court stated that "Pendency of litigation in and of itself, is not a sufficient basis on which to permit an amendment." *Id.* at 147. "(M)ere knowledge on the part of the trustee or of the referee in bankruptcy as to the existence of a claim is not sufficient basis for allowing the filing of an amended claim..." [cites omitted] *Id.* at 147. In *In re Moro Supply Company,* 229 F.Supp. 129 (E.D.Ark.1963), the Court noted that the listing of a claim in a bankrupt's schedules will not support the filing of an untimely proof of claim or the filing of an amendment to the same effect. See also *In re Little & Ives Co., Inc.,* 68–1 USTC ¶ 9345 (B.C.S.D.N.Y.1968); *In re Pigott,* 684 F.2d 239 (3rd Cir.1983). Finally, in *In re Little & Ives Co., Inc., supra,* Judge Babitt held that there was no claim to amend where a timely proof of claim was withdrawn and thereafter a new proof of claim was sought to be filed after the bar date.[2]

The final case which the Court will examine concerning the allowance of amendments to proofs of claim is *In re Miss Glamour Coat Co., Inc.,* 80–2 USTC ¶ 9737 (S.D. N.Y.1980). In *Glamour Coat,* the Internal Revenue Service (IRS) filed a timely proof of claim for FICA and FUTA taxes for 1974 and withholding taxes for 1973. After amending this claim at various times, the IRS filed a claim for corporate income taxes for the years 1968, 1969, and 1971, after the bar date. This was the first time that the IRS had claimed corporate income taxes in *Glamour Coat.* The IRS also filed other proofs of claim after the bar date seeking corporate income taxes for 1970. The Bankruptcy Court disallowed the IRS' amended claim holding, *inter alia,* that timely claims for FICA, FUTA, and withholding taxes may not be amended to include an untimely claim for corporate income taxes. The District Court remanded *Glamour Coat* to the Bankruptcy Court for further analysis consistent with the District Court's opinion.

The District Court in *Glamour Coat* stated that there was a tension between the liberal test for amendment under Rule 15 of the Federal Rules of Civil Procedure and the use of "technical or mechanical" tests for determining whether a proposed amendment should be allowed. 68–1 USTC ¶ 9345 at p. 85434. The District Court in *Glamour Coat* approved an approach which consists of taking an "overall view of the problem." *Id.* This overall view was stated to inherently require a balancing of equities. The District Court continued, stating that the following five considerations were appropriate for the Bankruptcy Court to address in determining whether an amendment should be allowed: (1) whether the debtor and creditors relied upon the Service's earlier proofs of claim or whether they had reason to know that subsequent proofs of claim would be filed pending the completion of an audit; (2) whether other creditors would receive a windfall, to which they are not entitled on the merits, by the Court's refusing to allow the Service to amend; (3) whether the Service intentionally or negligently delayed in filing its proof of claim stating the amount of corporate tax due; (4) the justification, if any, for the failure of the Service to file for a time extension for the submission of further proofs of claim; and (5) whether or not there are any other considerations which should be taken into account in assuring a just and equitable result.

The Court believes that the reasoning of the District Court in *Glamour Coat* reflects an appropriate policy to be employed in

**2.** The late claim sought to be asserted in *In re Little & Ives Company, Inc.* was for income taxes for the year 1955, while the timely but withdrawn proof of claim concerned income taxes for the years 1962 through 1965, inclusive.

determining whether to allow an amendment to a proof of claim in the instant case. Accordingly, the Court, as have the debtors and the Service in their briefs, will address the five considerations stated in *Glamour Coat.*

■ The first criterion is whether the debtors and creditors relied on the Service's timely proofs of claim or whether they had reason to know that subsequent proofs of claim would follow pending the completion of the Service's audit of IHI and NAE. The Service began its audit of the IHI and NAE corporate income tax returns for the taxable years 1974 and 1975 prior to or during 1978. (See affidavit of Fredric L. Blank attached to the debtors' May 13, 1983 Brief in Opposition to Cross-Motion for Summary Judgment by the United States of America and in Support of Debtors' Motion for Summary Judgment.) On October 15, 1980, a closing conference concerning this audit was held by the debtors and the Service, at which conference the parties discussed the adjustments to the debtors' corporate income tax, which taxes are the subject of this Order. (See affidavit of Fredric L. Blank.) Thereafter, on October 28, 1980, the debtors were notified by letter that a recommendation would be made that certain adjustments be made to the debtors' income tax liability for the debtors' tax years 1974 and 1975. (See Exhibit "B" to the affidavit of Fredric L. Blank.) IHI and NAE filed their respective Chapter 11 petitions on March 20, 1981, and a bar date of August 31, 1981, was set as the time by which proofs of claim were to be filed against said debtors. Thereafter, the IRS issued its notice of tax due for 1974 and 1975 by IHI and NAE on December 28, 1981. The debtors filed their second plan and original disclosure statement on January 22, 1982. This disclosure statement contained disclosure of certain contingent and unliquidated claims, which included the possibility of a tax deficiency claim being asserted by the Service. (See Disclosure Statement at p. 28.) The disclosure contains, *inter alia,* the following language:

"The debtors intend to vigorously contest the deficiency asserted by the Service and, in the event satisfactory settlement of the matter cannot be obtained, to refer the determination of any tax due for 1974 and 1975 to the Court pursuant to § 505, Title 11 United States Code. Provision is made in the Plan for payment of any contingent tax liabilities of the debtors and the affiliates." Disclosure Statement at p. 31.

The debtors' disclosure statement at Exhibit "O" anticipated payments under the plan for taxes of only $71,360.00. On October 28, 1982, the debtors, Bank of America, N.T. & S.A. ("BOA") and certain other parties received written approval of a settlement agreement whereby the debtors' disputes with BOA were terminated and on December 15, 1982, an Order was entered confirming the debtors' second amended and restated consolidated plan of reorganization.

The debtors contend that great reliance was placed on the Service's failure to timely file a proof of claim for corporate income taxes in reaching a settlement with BOA, as well as in the development, confirmation, and substantial consummation of the debtors' plan of reorganization. The Court rejects this contention in view of the fact that the debtors did not enter into meaningful settlement negotiations with BOA until after the death of David N. Smith in July, 1982, and that these negotiations were not concluded until October 26, 1982, when the Court orally approved the compromise and settlement entered into by the debtors and BOA. While it is true that the Service did not file its amended proofs of claim until November, 1982, the debtors' disclosure statement which was filed in January of 1982 exhibited the debtors' awareness of, and concern with, the potential of claims being asserted by the Service for corporate income taxes for NAE and IHI for the years 1974 and 1975.

The creditors in this case were also aware of the Service's interest in this case, and it is likely that this knowledge accounted for the assignment by BOA to the unsecured creditors of a portion of BOA's secured

status in an attempt to enable unsecured creditors to be in a position superior to that of the Service.[3] (See the October 28, 1982 Order approving the settlement agreement at page 6 and paragraph 6 at page 8 of the settlement agreement attached as exhibit A thereto.) Therefore, the Court finds that the debtors and creditors knew of the potential of the Service's asserting a claim for corporate income taxes against the debtors and that certain of the debtors and creditors actions were based on this knowledge.

The second consideration which the Court will address is whether other creditors would receive a windfall to which they are not entitled if the Service's amendment is not allowed. The Court believes that the payment of substantially all of the allowed claims of creditors pursuant to the debtors' confirmed plan, buttressed by the fact that the payment of those claims was expressly consented to by the Service at the December 15, 1982 confirmation hearing, estops the Service from attempting to avoid the effects of consummation of the debtors' plan. Therefore, the Court finds that other creditors would not receive a windfall if the Service's amendment is not allowed.

The third consideration which the Court will address is whether the Service intentionally or negligently delayed filing the amended proofs of claim. The Service in its Memorandum in Opposition to Debtors' Motion for Summary Judgment and in Support of the Cross-Motion for Summary Judgment by the United States states that,

"While it may have been prudent to file an estimated claim or an unliquidated claim, it cannot be said to be negligent to await completion of the normal audit and administrative process."

The Court rejects this position. The Service does not operate in a vacuum. The proper procedure for the Service to have followed was to file a proof of claim, at least stating the existence of an undetermined liability for corporate income taxes which could have later been amended to reflect the actual amount assessed by the

Service. (See *In the Matter of Little & Ives Co., Inc.,* 68–1 USTC ¶ 9345 (B.C.S.D. N.Y.1968)). While the failure to file a timely proof of claim was clearly not intentional, it was negligent. Furthermore, the Court notes that the Internal Revenue Manual, Bankruptcy Code Handbook, ¶¶ 326.1 to 326.3 at pp. 8493–12 through 8493–13 (1982) (Appendix A) sets forth a procedure which the Service is to follow to obtain an extension of time for filing a proof of claim where tax liability is as yet unliquidated. The Service did not follow this procedure in the instant case.

The fourth consideration which the Court will discuss is the justification, if any, for the failure of the Service to file for an extension of time for filing claims. The Service has stated that the element of special justification is insignificant in this case when compared with the other four factors of *Glamour Coat.* (Service's Memorandum in Opposition to Debtors' Motion for Summary Judgment at p. 11) The Court finds that there was no justification for the Service's failure to seek an extension of time for filing its claim for corporate income taxes in these cases.

The fifth and final criterion to be discussed under *Glamour Coat, supra,* is whether there are any other considerations which should be taken into account to assure a just and equitable result. Generally, this Court, like other courts, does not wish to have conflicts decided on procedural bases, thereby preventing parties from having their cases heard on the merits. However, procedural requirements serve a purpose, particularly in a Chapter 11 proceeding, of enabling a debtor to attempt to efficiently and economically reorganize itself. Other than these general principles, there are no compelling equitable criteria which have not been addressed by the Court earlier in this Order.

After a careful review of the arguments of counsel and the record in this case, the Court concludes that the Service will not be allowed to amend the May 18, 1981, and

**3.** The validity of this assignment became moot at the confirmation hearing in this case where the Service affirmatively approved confirmation of the debtors' plan.

June 29, 1981 proofs of claim filed as to the debtors, NAE and IHI. The Court reaches this determination for the following reasons:

In analyzing this case from the traditional point of view contained in such cases as *In the Matter of Vega Baja Lumber Yard, Inc., supra,* and *In re Moro Supply Company, supra,* it is clear that the Service's amendment must be disallowed. The Court has found earlier in this Order that the corporate income taxes asserted by the Service constitute a separate and distinct claim from the FUTA and withholding taxes asserted in this case. Accordingly, the Service's amendment asserts a new claim—i.e. a claim not arising out of the same occurrence or transaction as the timely filed proofs of claim filed by the Service in these cases. To the extent that the Court could find that a tax audit, closing conference and letter showing an intent to recommend adjustments to income tax liability constituted notice to the debtors of the Service's claims for corporate income taxes, the Court would hold that notice of the existence of a claim is not sufficient to establish that claim in a bankruptcy proceeding and that a creditor has an affirmative duty to protect its interest by filing timely a proof of claim.

In examining this case under the more liberal test contained in *In re Miss Glamour Coat Company, Inc.,* 80–2 USTC ¶ 9737 (S.D.N.Y.1980), this Court would refuse to allow the Service to amend its proof of claim. While the debtor and its creditors acted with knowledge of the potential of the IRS' asserting a claim for corporate income taxes in these cases, when balanced against the Service's behavior, it would not be appropriate to grant the Service leave to amend. The Service has disregarded its internal procedures concerning the filing of proofs of claim for unliquidated or disputed claims and has offered no justification for its failure to act timely. While amendments are to be freely allowed where justice so requires, and to the extent that *Glamour Coat* could be interpreted to allow amendments setting forth a new claim if a debtor had timely notice of the existence of or potential for asserting, said claim, the Service's unexplained negligence does not present an instance under which justice or fairness requires the allowance of an amendment.

Therefore, for the above-stated reasons, the Service's Motion for Leave to Amend Certain Proofs of Claim and May 6, 1983 Motion for Summary Judgment are denied, and the debtors' Motion for Summary Judgment on their objection to the Service's November 2, 1982, and November 18, 1982 proofs of claim filed against NAE and IHI, respectively, is granted.

IT IS SO ORDERED.

## APPENDIX A

(a) the cost of filing a proof of claim in relation to the potential for collection; and,

(b) the potential of collection from after acquired, or exempt assets.

(3) If a proof of claim is to be filed in the proceeding, follow the claim preparation procedures at text 321 and the TC 520, CC 81XXX input procedures provided for at text 328.

(4) Those files remaining in the chronological (or alternative follow-up file) suspense file after their respective "Bar Dates" have passed and no proof of claim was filed because no tax liability existed or a determination not to file a claim pursuant to (2) above has been made, should be retired to the closed proof of claim file in the Special Procedures function. At this time SPf should follow the procedures contained in text 319.2 for TC 521, CC 85 input procedures. The Part 4 of the Form 2552 will be withdrawn from the Special Procedures function open index file, properly noted that no proof of claim was filed and placed in the closed index file. The closure date will be noted in the Bankruptcy Control Book (if maintained), or other registry, by the Special Procedures function.

### 321  (12–7–82)                                  59(10)0
### Preparation and Filing of Proofs of Claim

(1) Form 6338, Proof of Claim for Internal Revenue Taxes (Bankruptcy Code Cases) (Exhibit 300–5) will be used to claim taxes due, other than administrative and "involuntary gap" taxes, in all bankruptcy proceedings commenced on or after October 1, 1979.

(2) Form 6338–A, Request for Payment of Internal Revenue Taxes (Bankruptcy Code Cases—Administrative Expenses) (Exhibit 300–6) will be used to claim taxes due as expenses of administration under Section 503(b) of the Bankruptcy Code. Form 6338–A will also be used to claim "involuntary gap" taxes under section 502(f) of the Bankruptcy Code (see 323:(5)).

(3) See 322 for a discussion of Suggested Interim Bankrupcty Rules. Also, Rule 3006(a) and (b), Suggested Interim Bankruptcy Rules, provides some guidance for Chapter 11 procedures. Those instructions are contained in 322:(2). Service personnel with the responsibility for preparing and reviewing Government claims must familiarize themselves with the

Bankruptcy Code provisions pertaining to claim procedure.

(4) Form 6338 and Form 6338–A should meet all requirements for filing a claim under the Bankruptcy Code. If either of the forms described does not meet some special court requirement, SPf, should consult district counsel and request assistance in the preparation of a suitable modification of the form(s) for the particular case involved. If modification of either form is authorized, two copies of the modified form should be forwarded through regular channels to the National Office, Attention: A/C (Collection), Office of Field Operations, OP:C:0, within ten days after adoption of the change.

### 322  (6–16–81)                                  59(10)0
### Time for Filing Proofs of Claim (Bar Dates)

(1) Bankruptcy Rules establishing bar dates have not yet been promulgated. Therefore, the Special Procedures function should make certain that all filing dates set by local rules and court orders are met.

(2) In Chapter 11 cases, some guidance concerning bar dates is found in the Suggested Interim Bankruptcy Rules. Rule 3001(3) states that claim may be filed at any time prior to the approval of the disclosure statement provided for at section 1125, unless a different time is fixed by the court. Disclosure statements can be approved by the court provided that all creditors are given a 20-day notice and a subsequent hearing in order to consider the disclosure statement and any objection thereto. (Rule 3006(a) and (b) of Suggested Interim Bankruptcy Rules).

(a) To ensure that the Government's interest is protected and the claim is timely filed, all proofs of claim should be filed within ten days after receipt of the 20-day notice provided for at Rule 3006(a) of the Suggested Interim Bankruptcy Rules, or at whatever time the court requires.

(b) Any creditor, including the United States, whose claim is listed by the debtor as disputed, contingent, or unliquidated as to amount, must file a proof of claim within the time prescribed above, otherwise the creditor will not be treated with respect to such claim, as a creditor for the purpose of voting in the plan or for distribution. (Rule 3001(b)(2) of Suggested Interim Bankruptcy Rules)

**732**

(c) The list of creditors prepared and filed with the court by the debtor constitutes prima facie evidence of the validity and amount of the claims of the creditors which are not listed as disputed, contingent, or unliquidated as to the amount. Any such claim listed by the debtor need not be filled by the creditor. However, it is the Service's position to always file a proof of claim to ensure accuracy and full protection of the Government's interest.

(3) If a bar date is missed, the matter should be immediately referred to the district counsel.

### 323 (8-4-82)                                    59(10)0
### Preparation of Proof of Claim

(1) The Special Procedures function, in the district where the proceeding is pending, or where there are outstanding liabilities, will prepare the appropriate proof of claim from the information secured from Form 2552, IDRS research and from the TDA Register, Currently Not Collectible Accounts Register, the district Examination function and Collection field and office functions. The proof of claim must be filed for the full amount of the assessed tax liability balance due before the bar date, or any extension thereof, even though a petition to the United States Tax Court, an offer in compromise, adjustment, or any other action is pending which may thereafter give rise to a need for amendment of the claim filed.

(2) Proof of Claim for Internal Revenue Taxes, Form 6338, and Request for Payment of Internal Revenue Taxes, Form 6338-A, are five part snap-out assemblies, and will be prepared in accordance with Exhibit 300-5 or Exhibit 300-6, as appropriate.

(3) When a proof of claim is prepared, a determination must be made as to the category of the claim, e.g., secured claim, unsecured priority claim or unsecured general claim. See text 327 and Exhibit 300-9, Classification and Priority of Unsecured Taxes.

(4) Pre-petition interest and pre-petition penalties are allowable and therefore should be listed on the proof of claim. Pre-petition penalties are subordinated, however, in liquidations to priority claims, unsecured general claims and then to late filed unsecured general claims under Section 726(a). Post-petition interest and post-petition penalties on pre-petition taxes are subject to disallowance under Section 502(b) and must not be shown on the proof of claim. See, however, Section 506(b) regarding interest on a secured claim.

(5) Whenever "involuntary gap" period taxes (See text 139:(3) for definition) are to be claimed, Form 6338-A will be prepared. In order to notify the court as to the priority and allowability to be accorded these taxes, the following statement must be placed on the face of the Form 6338-A: "The following taxes are claimed as involuntary gap expenses under Section 502(f)." (See Exhibit 300-6)

(6) A copy of the earliest Notice of Federal Tax Lien properly filed and refiled in accordance with *Internal Revenue Code of 1954, § 6323(f)(g),* which establishes the Government's priority for each liability listed as a SECURED CLAIM on Form 6338 should be attached to the proof of claim. *(See IRM 5420 and 5430.)* Subsequent filings of the same notices in other jurisdictions need not be attached.

(7) Section 506 (a) states that an allowed claim of a creditor that is subject to setoff under Section 553 is a secured claim to the extent of the amount subject to setoff, and is an unsecured claim to the extent that the amount so subject to setoff is less than the amount of such allowed claim. Consequently, the amount to be setoff should be shown under item A, Secured Claim, on Form 6338 and noted with an asterisk. The following statement should also be shown:

" * The Internal Revenue Service has the right to setoff this amount, which represents all (a portion) of the debtor's (debtors') (type of tax) refund for (period). Therefore the amount claimed in this proof of claim is secured under 11 U S.C. 506 (a) to the extent of the right of setoff, which is currently stayed under 362 (a)(7)."

(a) Often, the amount held for setoff is less than the total tax liability. In such a case, the excess over the amount shown as a secured claim should be shown in item B, Unsecured Priority Claim, or in item C, Unsecured General Claim, as appropriate.

(b) If the automatic stay has been released prior to filing the proof of claim, the procedure described above may not be applicable, since the setoff would have been made before the proof of claim was filed.

(c) If the liability is classified as a secured claim for reasons other than the setoff, the procedure described above is not applicable.

(8) The Bankruptcy Code requires disallowance of any claim which results from a credit reduction attributable to late payments to the state, in the amount of an otherwise applicable credit to the debtor in connection with F.U.T.A. payments. Therefore, the Federal Govern-

(Next page reproduced herein is 59(10)0-36.1; intervening material is omitted.)

## 325 *(6-16-81)* 59(10)0
### Disputed Tax Claims

(1) When the validity or priority of the Federal tax claim is disputed in any proceeding, close cooperation of the Special Procedures function with the district counsel and the United States Attorney is imperative. It is essential that requests for information coming from either official be expeditiously handled so that the interests of the Government are protected.

(2) Upon filing of a proof of claim in a proceeding, the Government becomes a party thereto, and officers and employees of the Service may appear as witnesses for the Government or may produce evidence in court in connection with the establishment of the validity of the proof of claim filed in the proceeding. For this appearance and for the production of evidence of this nature, no express authority need be obtained from the Commissioner so long as the appearance made or the evidence produced is intended to establish the rights of the Government.

## 326 *(6-16-81)* 59(10)0
### Unliquidated, Amended, and Supplemental Proof of Claim

## 326.1 *(8-4-82)* 59(10)0
### General

When more time is needed within which to complete the examination of returns or the searches requisite to filing an accurate proof of claim, the district counsel should be requested to take proper action to secure an extension of the period for filing a claim. (The referral to district counsel should only be resorted to if a reasonably accurate proof of claim cannot be prepared based upon the data supplied to SPf.) The request of the district counsel should be made in sufficient time to permit filing of a motion for extension prior to the expiration of the limitations period as set by statute or by court order. Since the application for extension must indicate the reason why the additional period is necessary for the filing of the claim for Federal taxes, the district counsel should be furnished such information at the time the request for extension is made. The Special Procedures function should be prepared to file a timely unliquidated proof of claim if the extension is denied.

## 326.2 *(6-16-81)* 59(10)0
### Unliquidated Claims

(1) An unliquidated proof of claim is the type of claim filed to protect the Government's interest before the exact liability of the taxpayer is determined. It should be resorted to only after it is evident to SPf that a reasonably accurate proof of claim cannot be prepared or there is a denial by the court of an extension of time within which to file a proof of claim. The unliquidated claim generally serves to meet the bar date limitation and must be followed by an amended or a supplemental proof of claim setting forth the correct tax liability after the exact amount owing has been determined.

(2) Proofs of claim (either Form 6338 or 6338-A) should include both liquidated and unliquidated amounts, with the latter being identified as "Unliquidated liability" in the "Remarks" columns. When estimating the amount of tax claimed, rounded figures should be avoided. In every instance where an estimated liability is included in the proof of claim, the class of tax and the taxable periods with respect to each should be shown separately with the estimated amount for each class of tax and taxable period for which any possible claim may be made in the final amended claim to be filed.

(3) Special Procedures function should base the estimated tax liability upon the information furnished in any status report by the investigating office. As soon as the correct and complete amount due can be determined, the estimated claim will be superseded by filing an amended or supplemental proof of claim.

**734**

**326.3** *(6-16-81)* 59(10)0

## Amended, Supplemental, Consolidated Claims

(1) When it becomes necessary to increase or reduce any amount stated in a filed claim, or correct any error, an amended proof claim should be filed, reciting on its face "Amendment No.        to Proof of Claim dated        " Every effort should be made to accurately state the tax liability in the amended proof of claim and to minimize the number of amendments. However, if necessary, subsequent to the bar date, an amended claim may be filed, adjusting upward or downward the tax liabilities claimed so long as the tax classification and taxable period were included in a timely filed proof of claim.

(2) If the proof of claim has been timely filed (prior to bar date), an amended proof of claim may be filed as necessary to claim the correct liability. Claims involving divisible assessments, i.e. Form 941 FICA and withheld income taxes, for which a timely claim was filed for any periods of the tax year can, after the bar date, be amended to include any quarters not included on the timely filed proof of claim. When such periods are added to the claim, the period of the liability should be the calendar year of the tax period. For example, a proof of claim was filed timely for periods 7703 and 7706. The period 7709 was not discovered until after the bar date. An amended claim should be filed showing the period for the third quarter as "1977", rather than 7709. Form 941 taxes are annual taxes which are divided into quarters for administrative purposes.

(3) If additional liability is discovered after the filing of a proof of claim, but before the bar date, a "Supplemental" proof of claim should be filed setting forth the additional tax. Such proof of claim should be marked "Supplemental No.        to Proof of Claim dated        ," indicating that it is to be read in conjunction with, and not as a substitute for, the original proof of claim filed.

(4) After two "Amended" or "Supplemental" proofs of claim have been filed in a proceeding, should another amendment or supplement become necessary, it is generally desirable to file a "consolidated" proof of claim incorporating all taxes claimed in the proceeding, including those set forth in the proofs of claim previously filed. Such claim should recite on its face "This claim consolidates Proofs of Claim dated        and        ." However, if the statement of taxes claimed is so extraordinarily long and complex that the filing of a consolidated claim would be burdensome, a supplemental or amended claim, so designated, may be filed to cover the particular items.

**327** *(6-16-81)* 59(10)0

## Classification of Tax Claims

(1) Section 507 enumerates the priorities of expenses and claims. Special Procedures function personnel must familiarize themselves with this portion of the bill. Document 6569, Bankruptcy Reform Act of 1978, pages 55 to 67, provides a concise comparison of the priority provisions of the new and former bankruptcy statutes.

(a) it is important to note that the date of tax assessment, plus extensions of time to file (if applicable) and the date of the debtor's petition in bankruptcy are critical to the determination of the allowability of a tax claim and to its priority status.

(b) Priority is granted under section 507 (a)(6)(C) to taxes required to be withheld or collected. This priority includes assessments made under IRC 6672 *and* third party liabilities due under IRC 3505. This is important to remember when determining employment tax liabilities due and for which priority is claimed under section 507(a)(6)(C).

(c) Section 507(c) authorizes the same priority for claims arising because of an erroneous refund or credit, as is or would have been allowed for the tax from which the refunded or credit arose. For proof of claim purposes involving erroneous refunds, it is important to correctly determine the priority status of the underlying tax so that the claim for refund or credit will be properly classified.

(2) Secured Tax Claims—If a Notice of Federal Tax Lien is filed, the tax claims are secured claims to the extent of the value of the property in the debtor's estate. Interest on a secured (lien) claim is allowed as a secured claim if the value of the property exceeds the claimant's interest in the property, plus the trustee's necessary costs and expenses of preserving or disposing of the property. It should be noted, however, if the amount of a secured claim is in excess of the value of the Government's lien interest in the property of the estate, the excess will be allowed as an unsecured claim. Accordingly, proofs of claim should be prepared to include the total amounts covered by Federal tax liens (tax, interest and penalty). If the trustee disallows a portion of the secured amount as an unsecured claim, an amended proof of claim may be filed if the court so directs, to reclassify