## In re CITY OF CAPITALS, INC., Debtor.

### Bankruptcy No. 83–A–0532.

United States Bankruptcy Court,
D. Maryland,
at Rockville.

Dec. 11, 1985.

Philip McNutt, Bethesda, Md., for debtor in possession.

Roger Frankel, Bethesda, Md., for Cohen Family Ltd. Partnership.

## MEMORANDUM OF DECISION

(Objection to Amended Proof of Claim)

PAUL MANNES, Bankruptcy Judge.

The matter before the court is the objection of City of Capitals, Inc. ("debtor") to the amended proof of claim filed by the Ronald J. and Dana Cohen Family Limited Partnership (the "Partnership" or "Cohen"). Debtor commenced this Chapter 11 proceeding April 7, 1983, and the Partnership filed its original proof of claim in the amount of $1,085,107.88 on July 24, 1984, well before the September 5, 1984, bar date. On January 18, 1985, the Partnership filed an amended proof of claim in the amount of $1,429,593.41, giving rise to the instant objection and hearings thereon. The main issue is whether, and if so to what extent, the Partnership as assignee

on a note may assess the debtor certain late charges and penalty interest provided for under the note where the assignor bank did not elect to do so.

### I.

City of Capitals, Inc. was organized in 1976 to develop and sell a 33.5-acre tract of land it had acquired at the southwest quadrant of the Route 301 and Route 50 intersect in the Belair section of Prince George's County, Maryland. In the northeast quadrant, the University of Maryland is constructing a scientific research center. The debtor's 33.5-acre tract is to be combined with a parcel at the southwest quadrant owned by Belair 301–50 S.W. Quadrant Commercial Properties, Inc. ("Belair"), and, together with a small parcel resulting from the rerouting of Mitchellville Road, will result in over 100 acres of perhaps the most sought after property in the Baltimore-Washington area.

On November 9, 1976, debtor took a loan in the amount of $675,000 from First National Bank of Maryland ("First National"), returning a promissory note secured by the debtor's real property and due and payable May 8, 1978. In the course of the debtor's financial collapse, the note fell into default and First National proceeded to foreclosure. At debtor's request, the Partnership intervened and purchased the assignment of the note for $1,085,107.88 based on First National's calculation of the amount due as of the purchase date, May 18, 1984.

In the following month, Francis X. Gaegler, Jr., president of the debtor and Belair; the debtor itself; Belair; and Ronald J. Cohen for the Partnership negotiated a joint business venture culminating in an Amended and Restated Memorandum of Understanding which was executed June 29, 1984. This agreement defined the legal relationship of the parties pending their determination of "the most appropriate form of entity (or entities) for developing the Property." The gist of the agreement was to give Cohen certain managerial control over and a half interest in the venture

in return for a commitment to obtain the necessary financing. One provision recognized the debtor's status as a Chapter 11 debtor in possession and mandated "that this Agreement must be approved by [the United States Bankruptcy Court for the District of Maryland]." The original 60-day termination date was extended to December 31, 1984, by a supplemental agreement executed August 30, 1984.[1]

A Pledge Agreement supplementing the Memorandum of Understanding was executed by the shareholders of the debtor and Belair on June 30, 1984. The gist of the Pledge Agreement was to give Cohen the right at any time and solely at his discretion to transfer the stock of the corporations to himself-and, upon the others' default on the Memorandum of Understanding or Pledge Agreement, to exercise all rights incident to stock ownership. By letter to the stock escrow agent dated December 17, 1984, Cohen exercised his transfer right, and by letter to debtor's bankruptcy counsel dated December 26, 1984, Cohen wrote that he had voted his stock to make himself sole director of the debtor and further that,

> You are advised that from and after 6:00 p.m. on Wednesday, December 26, 1984 you do not represent City of Capitals, Incorporated, and you are not authorized to act for or on behalf of the Corporation.

Meanwhile, on December 12, 1984, counsel for the debtor filed a Motion for Immediate Order Approving Development Loan by which the debtor sought to obtain the court's approval of an $8 million loan from First Maryland Savings and Loan ("First Maryland"). With the refinancing, the debtor proposed *inter alia* to pay off the First National note held by Cohen, listed in the Notice of Intention to Obtain Refinancing as having a balance of $1,177,220 as of November 30, 1984. Cohen objected to the refinancing on grounds unrelated to the matter at hand. This court approved the

refinancing over Cohen's objection by order entered December 21, 1984, from which Cohen has taken an appeal. As directed in the order, the debtor paid the note held by Cohen, using a figure of $1,192,916.26 representing the balance as of December 30, 1984. In the letter from debtor's counsel, John D. Gilmore, Jr., to Cohen dated December 27, 1984, which transmitted payment, Mr. Gilmore stated:

> We have attempted to reach your attorney but have been unable so to do to verify the exact amounts due on the several obligations of these entities owned by you. We have computed the interest through December 30, 1984, on those obligations which bear interest at the rate we have been informed applies.

In a December 28, 1984, telephone conversation upon receipt of the payment, Cohen advised Gilmore of his refusal to accept the checks because of a belief that additional interest was due. As stated in the Partnership's post-trial brief and borne out by the evidence,

> The Partnership had not independently calculated such amount [due] prior to being requested in late December 1984 to supply a payoff figure, but instead had used the figure supplied by First National at the time of the assignment of the Note and Deed of Trust to the Partnership on May 18, 1984.

Cohen's belief crystallized into an amended proof of claim in the amount of $1,429,593.41 which was filed on January 18, 1985. Meanwhile, counsel for the parties jockeyed for the hardset positions befitting the full-blown trial for which they were headed. By January 30, 1985, the debtor had tendered the Partnership's version of the amount due, subject to this court's determination of the accuracy and validity thereof, in order to take the Partnership out of the picture. The Partnership's version of the amount due represents the maximum amount assessable against the debtor under the note—the worst case scenario.

---

**1.** This court held the agreement invalid in a December 21, 1984, ruling on a matter tangential to that at hand due to the parties' failure to obtain the required court approval. A subsequent motion for approval was denied.

## II.

As an initial matter, the debtor argues that the Partnership's amended proof of claim must be rejected because it was not filed until January 18, 1985, well beyond the September 5, 1984, bar date set by the court. Debtor argues that neither the doctrine of relation back nor equity permits allowance of the amended claim. This argument is contrary to the general rule that when a claim is filed timely, amendments to that claim filed after the bar date are accepted as justice requires to permit the fair consideration of all claims. *In re International Horizons, Inc.*, 751 F2d 1213, 1216–1217 (11th Cir.1985); *LeaseAmerica Corp. v. Eckel;* 710 F.2d 1470, 1473 (10th Cir.1983); *Matter of Commonwealth Corp.*, 617 F.2d 415, 421 (5th Cir. 1980); *In re International Home Design*, 28 B.R. 584, 586 (BC W.D.Mo.1983); *In re Simms*, 40 B.R. 186, 188–89 (BC N.D.Ga. 1984).

The doctrine of relation back is embodied in Federal Rule of Civil Procedure 15(c) which provides,

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

In bankruptcy proceedings, this rule is triggered by Bankruptcy Rule 7015, which provides that, "Rule 15 F.R.Civ.P. applies in adversary proceedings." A filed proof of claim, however, is not an adversary proceeding because it is not a proceeding at all. *See* Bankruptcy Rule 7001; 11 U.S.C. § 502(a). Under Bankruptcy Rule 3001(f), a properly filed proof of claim is *prima facie* evidence of the validity and amount of the claim. Furthermore, Bankruptcy Rule 3007 makes it clear that a filed proof of claim alone does not make an adversary proceeding:

> If an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding.

In the case at bar, the post-bar date amended claim, unlike most, preceded the objection. Therefore, when the Partnership filed its amended claim January 18, 1985, an adversary proceeding had not been and still was not formed and F.R.Civ.P. 15(c) did not save the claim from being untimely, apart from the general rule.

Despite the foregoing conclusion, debtor's objection to the amended proof of claim did form a contested matter to which F.R.Civ.P. 15(c) could apply under Bankruptcy Rule 9014, which provides in pertinent part that,

> The court may at any stage in a particular [contested] matter direct that one or more of the other rules in Part VII shall apply.

*See also* Bankruptcy Rule 9014 (Advisory Committee Note); *In re International Horizons, Inc., et al.*, 31 B.R. 723, 725 (BC N.D.Ga.1983), *aff'd* Civil No. C83–1567A (N.D.Ga. Nov. 18, 1983), *aff'd* 751 F.2d 1213 (11th Cir.1985). Under a F.R.Civ.P. 15(c) analysis, the court finds that the amendment "relates back" because that claim arises out of the same transaction (a promissory note executed by the debtor) on which the original claim was based. But whether F.R.Civ.P. 15(c) applies or not, the court finds that equitable considerations must govern the final analysis and that "the crucial question is whether the opposing party would be unduly prejudiced by the amendment." *In re Futuronics Corporation*, 23 BR 281, 283 (BC S.D.N.Y. 1982); *see also, In re International Horizons, Inc., et al.*, 31 B.R. at 725–728, 751 F.2d at 1216.

In determining prejudicial effect, the court considers such elements as bad faith or unreasonable delay in filing the amendment, impact on other claimants, reliance by the debtor or creditors (including First Maryland), and change of the debtor's position. *See, e.g., In re Hertz*, 38 B.R. 215, 218 (BC S.D.N.Y.1984). The court does not find unconscionable conduct which would bar the amendment as an act of bad faith. Cohen testified that he had relied on the advice of counsel in using First National's

calculation for the original proof of claim. However, the Partnership did not pursue recalculation of the amount of the note until debtor had backed out of negotiations with Cohen and requested in late December a payoff figure for purposes of gaining a release from the Partnership's lien, as required by this court's December 21 order approving refinancing. Furthermore, Cohen maintained as late as the hearing on refinancing December 17, 1984, of which exhibit the court takes judicial notice, that the Partnership's lien was in the amount originally claimed. The court finds that these circumstances constitute inattention on Cohen's part but nothing more.

Although Cohen's conduct created a potential for prejudice to the debtor, the debtor's reliance on the amount originally claimed proved not to be detrimental, with the obvious exception of this dispute which the aforementioned inattention guaranteed. The whole picture reveals that the debtor had calculated the Partnership's claim to be $1,192,916.26 as of December 31, 1984, while the Partnership recalculated it to be $1,429,593.41, a difference of $236,677.15.[2] This difference is 3% of the $8 million refinancing approved by the court December 21 and was contemplated in the refinancing proposal as represented in the debtor's Motion for Immediate Order Approving Development Loan filed December 12 and served on all creditors with the Notice of Intention to Obtain Refinancing:

> Claims associated with the advance of funds or credit through Mr. Cohen have been filed by Cohen or the Cohen family trust. Despite the possible legal insufficiency of the Cohen claims against the estate, the debtor intends to pay the Cohen claims, plus allowed interest in full. In the event of any dispute by Cohen, the debtor intends to place the sums owed to Cohen in escrow until the resolution of such dispute. Thus, Cohen can assert no

prejudice from the entry of an immediate order.

Fortunately for the Partnership, the debtor had based its refinancing proposal on a worst-case scenario and thereby avoided the possibility of detrimental reliance by anyone. (Proceeding as such was also in the debtor's interest toward winning approval of the proposed refinancing.) Nor can the court find a change of position as a result of Cohen's conduct. Assuming, for the purposes of this issue, that the amendment reflects a proper assessment, the debtor's position is changed only to the extent of requiring return of the amount due and owing to the Partnership had the debtor properly scrutinized the arrangement earlier. The court finds accordingly that no prejudice resulted from the post-bar date filing of the amendment *per se*. This conclusion might be different were there some basis to believe that, had the debtor known Cohen's position earlier, the debtor could have paid off the note earlier, thereby stopping the accrual of charges and interest. However, such is not the case.[3] Rather, it appears that the debtor's pursuit of refinancing and eventual payoff on the Partnership's claim grew from other motivations. Indeed, the court doubts that Cohen was at all inclined to take an adversarial position against the debtor until unexpectedly learning that the debtor had backed out of the understanding and was pursuing refinancing through First Maryland.

### III. A.

◼ Although the court concludes that the amended proof of claim is not time-barred, issues remain as to whether it may be allowed in the amended amount. The debtor argues that Cohen cannot recalculate the amount of the note post-assignment, citing Maryland case law holding that the assignee takes no greater rights, title, and interest than was held by the

---

2. At final argument in the case at bar, counsel for debtor pointed out that the debtor's calculation of $1,192,916.26 was inflated and that the correct amount due was actually $1,158,815.01. This being a new argument, and the court being concerned with the earlier events, the $1,192,916.26 figure will be used for present purposes.

3. With one exception taken up in the penultimate paragraph of Part IV of this decision.

assignor at the time of assignment. *See Motor Vehicle Security Fund v. All Coverage Underwriters, Inc.*, 22 Md.App. 586, 325 A.2d 115 (Md.Ct.Spec.App.1974); *James v. Goldberg*, 256 Md. 520, 261 A.2d 753 (Md.1970). Specifically, the debtor would have it that in calculating the amount of the note as of the time of assignment, First National fixed its interest therein at $1,085,107.88 and Cohen could take no greater interest. The court does not doubt the maxim for which the debtor's cases stand, but the issue remains whether the original calculation fixed the holder's interest in the note or whether the holder had a continuing right to recalculate. Assignment would not affect such a right: it would be just as much a part of the holder's "interest" in the note as the amount due at a given moment, and would be taken by an assignee absent relinquishment or waiver of the right. In order to determine this right, we turn first to the contract between the parties, consisting of the promissory note dated November 9, 1976, and the deed of trust of even date securing payment of the note.[4]

The note does not expressly provide for or against recalculation. It does, however, provide that,

Upon any default under this Note or upon an Event of Default, as defined in the said Deed of Trust, the unpaid principal with interest and all other sums secured by the Deed of Trust shall, at the option of the Holder of this Note, become immediately due and payable.

As to this Note and the Deed of Trust and any other instruments securing the indebtedness, Promisor ... waive[s] valuation and appraisement, presentment, protest and demand, notice of protest, demand and dishonor and non-payment of this Note, and expressly agree that the maturity of this Note or any payment

hereunder may be extended from time to time without in any way affecting the liability of Promisor and all guarantors and endorsers, for which a fee may be charged.

The deed of trust likewise provides that,

11. REMEDIES ON DEFAULT—If default be made ..., then:

(a) Acceleration—All of the indebtedness secured hereby shall become and be immediately due and payable at the option of the Beneficiary, without notice or demand which are hereby expressly waived ...;

. . . .

16. DELAY—No delay by Beneficiary or Trustees in exercising any right or remedy hereunder, or otherwise afforded by law, shall operate as a waiver thereof or preclude the exercise thereof during the continuance of any default hereunder.

The court finds that these provisions give the holder of the note and deed of trust, whoever that might be, broad latitude for unilaterally considering, upon the debtor's default or later, without notice, any or all indebtedness immediately or subsequently due and payable. Under the quoted provisions, the holder First National never forfeited its option to calculate the amount due most adversely to the debtor, despite prior calculations which, e.g., may have forborne late charges.[5] Furthermore, as the debtor's cited case law makes clear, this right passed to Cohen who became the holder upon assignment of the instruments.

### III. B.

■ While the contract between the parties authorized recalculation of the amount of the note, such action still could be held inequitable. This argument is distinct from that against acceptance of the post-

---

**4.** Lest there be any doubt that the deed of trust be part of the contract, the note provides that,

This Note is secured by the Deed of Trust executed of even date herewith by Promisor to John W. McClean and J. Martin Kline, Jr. as Trustees, to which Deed of Trust reference is hereby made for a description of the prop-

erty conveyed, definition of terms, the nature and extent of the security and the rights of the Bank, the Holder of this Note and its and their successors and assigns, in respect to such security.

**5.** See footnote 3.

bar date amended claim. It goes not to the amendment *per se* but to the exercise of the right to recalculate charges and interest under the note. While the court has found that the terms of the contract authorized recalculation, other circumstances could be held to estop the Partnership from recalculating or to constitute waiver of that right.

For the same reasons that the court found no prejudice resulting from the amended claim, the court finds no prejudice which would estop the Partnership from recalculating.[6] Again, and for the same reasons, the court finds that the Partnership's recalculation involved inattention, but again, the debtor's reliance on the original calculation proved not to be detrimental and any change of position only returns the debtor to where it would have been, assuming that the additional charges and interest are correct. But the doctrine of waiver does not require a finding of prejudicial effect and, as developed by the case law, may involve the same conduct which triggers application of the doctrine of estoppel:

> In the case before us, if the situation, condition, and conduct of the parties were not sufficient to bar the allowance of the alleged claims upon the ground that the appellant was estopped to assert the same, it is our further conclusion that by his acts and conduct, which formed part of the basis for declaring the existence of estoppel, he had taken such a position as, without regard to any influence upon or change of position on the part of others, would have justified the chancellor in decreeing that the appellant had voluntarily waived the right to collect the coal and salary claims; such waiver having, in effect, modified to that extent any contract he may previously have had with the Company with reference to the subjects of either of the claims. The conclusion that the appellant cannot sustain the claims by reason of his waiver thereof, is an illustration of the close inter-relation of waiver and es-

toppel; for, in substance, it is a finding that he is estopped to assert such claims because of having waived the same; in which connection the language of *Crosswell v. Connecticut Indemn. Ass'n,* 51 S.C. 469, 478, 29 S.E. 236, 239 [1896], may be appropriately quoted as follows: "[Waiver is] the relinquishing, giving up, or surrendering some known legal right, [and] may be found to exist if one 'acts in such a way * * * that his conduct implies that he has waived his right,' and * * * 'amount[s] to a bar or obstruction when once established,' and * * * 'might be said to be an estoppel.' "

*Benson v. Borden,* 174 Md. 202, 198 A. 419, 427–28 (Md.1938); *see also, Gould v. Transamerican Associates,* 224 Md. 285, 167 A.2d 905, 909–11 (Md.1961). The court finds no words which would have constituted an express waiver of the Partnership's right to recalculate. The issue therefore becomes whether any conduct implied a waiver of that right.

The record reveals that Cohen did absolutely nothing with respect to the original calculation. He did not check it when negotiating the assignment with First National, he did not check it at the time the assignment was executed, he did not check it upon filing the Partnership's original proof of claim, and he did not check it when introducing that proof of claim into evidence at the hearing on debtor's motion for approval of refinancing. As found before, that conduct was inattentive, but the court cannot conclude that it constitutes waiver. The court doubts that Cohen realized the full extent of his rights under the note and deed of trust until, at the debtor's request for a payoff figure in late December, 1984, he undertook for the first time to calculate the amount of the note for himself. Cohen may be held constructively to have known of his rights, but so may the debtor, including the provision of the deed of trust which excused any delay on the part of the holder. For that reason and because of the aforementioned broad discretion given to the holder under the note and deed of

6. See footnote 3.

trust, the court cannot find that Cohen's conduct warranted an inference that he had waived his right to recalculate the amount owing up to the maximum. Cohen's inaction, alone, simply does not amount to waiver. *But cf., Gould v. Transamerican Associates,* 167 A.2d at 912 ("the words, actions, and conduct of Gould amply justified and warranted an inference by the appellee that the appellants had relinquished their right").

## IV.

■ The court having concluded that recalculation of the amount of the note was permissible, the issue remains whether the amount arrived at is correct. That amount represents the addition of "compound" interest and interest on late charges which the debtor argues are not justified under the note. The specific issues are whether penalty interest may be assessed on overdue interest, whether penalty interest may be assessed on unpaid late charges, and the frequency with which penalty interest may be assessed.

The note requires monthly payments of interest on the unpaid principal at the rate of four percent above the prime rate. No periodic payments of principal are required, only payment of the entire unpaid principal by May 8, 1978. Late charges are assessable under the note as follows:

> Promisor promises to pay at the option of the Holder of this Note, a "late charge" equal to five percent (5%) of the aggregate monthly payment required by this Note, if such payment is made more than fifteen (15) days after the due date thereof....

Certain costs may also be assessed under the note as follows: "the Promisor promises to pay costs of collection including a reasonable attorney's fee, if this Note is referred to an attorney for collection after default."

The crucial paragraph at issue here provides that,

> In the event Promisor shall fail to make any one or more payments on account of interest or of principal, when the same shall become due and payable, as is herein or in the Deed of Trust securing this Note provided, Promisor shall pay to the Holder of this Note interest on any overdue payment of principal and interest on any overdue payment of interest charges and premiums at the rate of one percent (1%) per annum above the rate otherwise payable under the terms of this Note, from the date the same shall become due and payable until the date paid.

The court construes this last paragraph to authorize automatically, upon a payment becoming overdue, assessment of interest on (1) any overdue payment of principal and (2) any overdue payment of interest charges and premiums. The court shall call this interest on overdue payments "penalty interest." (Since penalty interest may be assessed here on an overdue payment of interest, it then also could be called "compound interest.") Since penalty interest is assessed "[i]n the event Promisor shall fail to make *any one or more* payments on account of interest or of principal, *when the same shall become due and payable*" (emphases added), and since an interest payment comes due and is payable each month, penalty interest is assessable monthly if that monthly payment is in fact overdue. Furthermore, although the note sets the penalty interest in terms of a *per annum* rate ("one percent (1%) per annum above the rate otherwise payable under the terms of this Note"), the court does not find such language to limit assessment of penalty interest to an annual basis. The monthly interest obligation is defined in terms of a prime rate which is itself defined in terms of a *per annum* rate. The court finds that penalty interest, like the monthly interest rate which is used as a basis for arriving at the penalty interest rate, is "calculated on a three hundred sixty day year factor applied to actual days" as provided under the note. For example, if an April interest payment were not made, penalty interest would be payable at

the rate of (30 days ÷ 360 days) × (prime rate + 5%).

The court further finds that the term "premiums" includes all amounts which can be assessed the debtor under the note besides principal and monthly interest payments. This finding is based on the direction at the end of the note that "[a]ll payments of principal, interest and premium shall be made during regular business hours at the principal office of the Bank." The court finds that "principal, interest and premium" must describe the universe of sums payable under the note and that "premium," the only undefined term of the three, is appropriately construed to include all sums additional to interest and principal payments. *See The Random House College Dictionary*, 1046 (rev. ed. 1975). Accordingly, "premiums" include late charges and costs. However, the court finds that penalty interest may not be assessed on late charges because the note does not define when they are due, only when they are assessable depending on whether and when the holder exercises its option. They are distinct from principal and monthly interest payments which, under the terms of the note, become due automatically at a certain time without action on the part of the holder. It would be inequitable to automatically assess penalty interest on an overdue payment of late charges when the debtor has no way of knowing when or even if a payment of late charges has become due. To this extent, Cohen's inattention prejudiced the debtor by foreclosing any opportunity to prevent the automatic assessment of penalty interest. The court reaches this conclusion, despite the provision of the deed of trust excusing the holder's delay, on the equitable grounds which do not apply to enforcement of the other provisions of the contract.

Counsel for the Partnership shall submit a proposed order setting out the details and bottom line of its calculation of the amount of the note consistent with the court's findings and conclusions.