**In re JSJF CORPORATION, dba Weiler's Deli, Debtor.**

**Wall Street Plaza, LLC, Appellant,**

v.

**JSJF Corporation, dba Weiler's Deli, Appellee.**

**BAP Nos. CC–05–1051–BKMO, CC–05–1053–BKMO, CC–05–1103–BKMO. Bankruptcy No. SV 04–14037 KT.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Feb. 24, 2006 at Pasadena, California.

Filed—May 1, 2006.

---

Lewis R. Landau, Calabasas, CA, for Appellee.

Richard M. Moneymaker, Moneymaker & Moneymaker, Los Angeles, CA, Geordan Goebel, Camarillo, CA, for Appellant.

Before: BRANDT, KLEIN and MONTALI, Bankruptcy Judges.

## OPINION

BRANDT, Bankruptcy Judge.

This appeal presents questions regarding the "landlord's cap" of § 502(b)(6),[1] untimely claims, and amended claims.

A few days after landlord Wall Street Plaza, LLC, was awarded a state court judgment for damages against debtor JSJF Corporation for breach of lease, JSJF filed its chapter 11 petition. Wall Street and its counsel filed three proofs of claim, to which JSJF objected on various grounds, including that all were for attorneys fees, not "rent reserved," and that two were time-barred. The bankruptcy court sustained debtor's objections, disallowed all three claims, and denied Wall Street's motion for reconsideration.

Meanwhile, Wall Street sought leave to file a fourth proof of claim on its judgment, either as an amendment to the first timely claim or as late filed, which the bankruptcy

---

**1.** Absent contrary indication, all "Code," chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, prior to its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, 119 Stat. 23, as the case from which these appeals arise was filed before its effective date (generally 17 October 2005).

All "Rule" references are to the Federal Rules of Bankruptcy Procedure, all "FRCP" references are to the Federal Rules of Civil Procedure, and all "FRAP" references are to the Federal Rules of Appellate Procedure.

court denied. It also denied Wall Street's motion for reconsideration.

Because § 502(b)(6) does not limit lessors to claims for "rent reserved," we REVERSE the order on the first claim. We AFFIRM disallowance of the late second and third claims, and, as no prejudice was shown, we REVERSE the disallowance of the final claim and REMAND for its consideration as an amended claim. Finally, to the extent they are not mooted by our dispositions respecting the claims themselves, we AFFIRM the denials of reconsideration.

## I. FACTS

### A. *Background*

In 1996, JSJF sublet space for its restaurant from Wall Street. The lease included a provision that attorney's fees were "additional rent." JSJF vacated the premises after occupying the space without paying rent for approximately seven months. Seven years later, and following a state court jury trial on the defaulted lease obligations and JSJF's counterclaim for constructive eviction, Wall Street was awarded judgment for damages of $183,240.67 (the "Judgment"): $154,452 for breach of the sublease and $28,786.67 for lost rent resulting from wrongful termination of the lease. Wall Street also prevailed on JSJF's counterclaim, obtaining a judgment of dismissal, with attorneys' fees to be awarded later. Several days later, JSJF filed its chapter 11 petition, while continuing to operate the business as a debtor in possession. Wall Street was its primary unsecured creditor: JSJF scheduled the judgment as contingent, unliquidated, and disputed, because, as JSJF later explained, the time for appeal had not elapsed, attorney's fees had not yet been determined in state court, and it was reserving its appellate rights.

On 9 November 2004, after the claims bar date of 31 August 2004, JSJF filed its disclosure statement (which included a summary of the Wall Street/JSJF litigation) and a proposed plan, which stated in part:

> The Debtor estimates that unsecured claims will total approximately $91,171 excluding the claim of Wall Street which will add an additional claim based on the results of claims litigation. The Debtor estimates for purposes of this Disclosure Statement [sic] only that the maximum amount of Wall Street's allowed claim will not exceed $125,000.

Chapter 11 Plan filed 7 October 2004, page 5.

The plan, confirmed on 27 January 2005, provided for quarterly payments of $9000 to general unsecured claim holders until paid in full. Confirmation was not stayed pending these appeals.

JSJF acknowledged in the final decree it prepared "that appeals are pending ... [, and] that allowed general unsecured claims are treated to full payment under Class 2 of the Debtor's chapter 11 plan. If the Bankruptcy Court's orders disallowing Wall Street['s] ... claims are reversed and to the extent such claims are allowed, then such allowed claims would qualify for payment as a Class 2 claimant under the plan." Order [on] Final Decree, 2 May 2005: As there are adequate funds for distribution to Wall Street, this appeal is not moot, *see In re Beatty*, 162 B.R. 853, 856 (9th Cir.BAP1994), and we have jurisdiction.

### B. *Claims*

Returning to the focus of these appeals:

*Claim 11*, filed timely on 16 August 2004, asserted a secured claim of $133,807.52 for a "civil judgment of attorney fees and costs," entered 7 May 2004.

The claim references the state court judgment by date, court, and case number. The derivation of the amount and date is not explicit, but the amount matches that in counsel's (then stayed) state court motion for fees and costs.

The bankruptcy court, sustaining JSJF's objection, disallowed the claim, ruling that it was not for "rent reserved" under § 502(b)(6) and stating "I think 502(b)(6) does apply." Transcript, 9 December 2004, page 20.

*Claims 16 and 17* were both filed on 2 September 2004 by two of Wall Street's law firms in their own names, as secured claims for "civil judgment[s]" of $10,000 and $250,000 respectively. The objections and rulings were the same for both: "I'm sustaining those objections for 16 and 17. They're late filed. They are not filed by parties who, so far as I can tell, have any direct claim against this Debtor [as] their claims are derivative through the creditor . . . ." Transcript, 9 December 2004, page 20.

The bankruptcy court entered a single order disallowing claims 11, 16, and 17, on 20 December 2004, and an order denying reconsideration on 20 January 2005, which Wall Street timely appealed (No. CC–05–1051).

*Claim 20* was filed on 22 December 2004 with a copy of the judgment attached. The proof of claim was for $183,241.67, unsecured, for "damages for breach of lease and for attorneys' fees." Wall Street moved for leave to have claim 20 allowed as late filed, i.e., after the claims bar date, or to be considered as an amendment to claim 11. JSJF objected to claim 20 because it was untimely and unsupported by evidence showing excusable neglect. JSJF also argued that because claim 20 was for damages for breach of the lease, it could not "relate back" as an amendment to claim 11, which was for attorney fees for defending against JSJF's cross-claim for constructive eviction. The bankruptcy court sustained JSJF's objection:

I don't think you can make the relation-back argument. I understand that the attorney's fees and the judgment all arise out of the same lawsuit, but . . . it is absolutely clear that . . . all of the claims that were made before this last claim were solely related to attorney's fees.

I think . . . that you've changed the basis of the claim in your request for amendment. And I don't think you qualify by changing—I think it's a new claim. It doesn't mean that . . . its existence was unknown, but it's a new claim when it's placed side by side with a claim that was timely filed on behalf of the creditor entity.

[Referring now to the issue of whether it should be allowed as a late-filed claim] I think on the issue of prejudice to the Debtor . . . in the process now, the acceptance of this new claim would begin a whole new round of litigation.

Transcript, 11 January 2005, page 19.

Wall Street appealed the resulting order, entered 20 January 2005 (No. CC–05–1053). The bankruptcy court denied Wall Street's timely § 502(j) motion for reconsideration on 7 March 2005, which Wall Street also appealed (No. CC–05–1103).

We consolidated the three appeals.

## II. JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. § 1334 and § 157(a), (b)(1), and (2). We do under 28 U.S.C. § 158(c).

## III. ISSUES

Whether the bankruptcy court abused its discretion:

A. In sustaining debtor's objections to claims 11, 16 and 17;

B. In disallowing claim 20 as an amendment to claim 11 or as a late-filed claim; or

C. In denying reconsideration of its disallowances of the claims.

Wall Street also argued to the bankruptcy court that it did not need to file a proof of claim, contending that Rule 3003, which requires a proof of claim in chapter 11 cases only if the debt is scheduled as disputed, contingent or unliquidated, was not triggered since there was no "genuine" dispute. The bankruptcy court did not explicitly rule on this issue. Wall Street included it in its statement of issues presented in these appeals, required by Rule 8010(a)(1)(C), and mentioned it again in its opening brief. But it cited no authority for this argument in the brief, contrary to Rule 8010(a)(1)(E). That omission waives the issue on appeal, *Heft v. Moore*, 351 F.3d 278, 285 (7th Cir.2003); and *In re O'Brien*, 312 F.3d 1135, 1136 (9th Cir.2002) (applying FRAP 28). We need not, and do not, consider it.

## IV. STANDARDS OF REVIEW

■ A. We review the bankruptcy court's conclusions of law and its interpretation of the Bankruptcy Code and Rules de novo, with no deference given to its conclusions. Rule 8013; *In re Staffer*, 262 B.R. 80, 82 (9th Cir. BAP 2001), *aff'd*, 306 F.3d 967 (9th Cir.2002); and *In re Pardee*, 218 B.R. 916, 919 (9th Cir. BAP 1998), *aff'd*, 193 F.3d 1083 (9th Cir.1999).

■ B. We review findings of fact for clear error. Rule 8013. A factual finding is clearly erroneous if the appellate court, after reviewing the record, has a firm and definite conviction that a mistake has been committed. *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). And "[w]e may regard a finding of fact as clearly erroneous not only if it is without adequate evidentiary support, but also if it was induced by an erroneous view of the law." *Power v. Union Pac. R.R. Co.*, 655 F.2d 1380, 1382–83 (9th Cir.1981) (citations omitted).

■ C. We review the bankruptcy court's decision to deny a motion to amend a claim for abuse of discretion. *In re Burnett*, 306 B.R. 313, 317 (9th Cir. BAP 2004), *aff'd*, 435 F.3d 971 (9th Cir.2006). Likewise, its determination whether a party has shown excusable neglect, *In re Cahn*, 188 B.R. 627, 629 (9th Cir. BAP 1995), and its denial of reconsideration of allowance or disallowance of a claim. *In re Consol. Pioneer Mortgage*, 178 B.R. 222, 225 (9th Cir. BAP 1995), *aff'd*, 91 F.3d 151 (9th Cir.1996) (table).

■■ A court abuses its discretion if it bases its ruling on either an erroneous view of the law or a clearly erroneous assessment of the evidence. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); *In re Travel Headquarters, Inc.*, 140 B.R. 260, 261 (9th Cir. BAP 1992). Under the abuse of discretion standard, we must have a definite and firm conviction that the bankruptcy court committed a clear error of judgment to reverse. *In re Black*, 222 B.R. 896, 899 (9th Cir. BAP 1998).

## V. DISCUSSION

### A. Jurisdiction; Scope of Appeal

■ As the motion for reconsideration was filed within 10 days of entry of the underlying order, FRCP 59, applicable in bankruptcy via Rule 9023, applies, and we have jurisdiction to review both the underlying order and the order denying reconsideration. *In re Tennant*, 318 B.R. 860, 866 & n. 5 (9th Cir. BAP 2004) (distin-

guishing between appeal of an order denying FRCP 60 motion and appeal of a timely FRCP 59 motion); *In re Cascade Roads, Inc.*, 34 F.3d 756, 761 (9th Cir.1994) (appellate court may review the merits of a bankruptcy court order where the parties have fully briefed those issues even if the order was not identified in the notice of appeal).

But Wall Street's notice of appeal in CC–05–1051 designates and attaches only the order denying reconsideration, not the underlying order which sustained JSJF's objections to claims 11, 16, and 17. Although Rule 8001(a) does not require a notice of appeal to designate the order or judgment from which an appeal is taken, *In re Dudley*, 249 F.3d 1170, 1174 (9th Cir.2001), our rule does.

But 9th Cir. BAP Rule 8001(a)–1 is a local rule, and we may depart from it absent prejudice. *In re Telemart Enters., Inc.*, 524 F.2d 761, 766 (9th Cir.1975). There is none, and the parties have briefed the issues regarding the disallowance of claims 11, 16, and 17. Accordingly, we will review that order.

### B. *"Rent Reserved"*

■ JSJF's only objection to claim 11 was that it was not "rent reserved" and, it contended, therefore not allowable under § 502(b)(6). That section, the "landlord's cap," limits the amount of a lessor's claim for lease termination damages:

> (b) ... if [an] objection to [the] claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and *shall allow such claim* in such amount, *except to the extent* that-
>
> (6) *if* such claim is *the claim of a lessor for damages resulting from the termination of a lease of real property,* such claim *exceeds-*

> (A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of-
>
> (i) the date of the filing of the petition; and
>
> (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus
>
> (B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates.

11 U.S.C. § 502(b) (emphasis added).

In *In re McSheridan*, 184 B.R. 91, 99–100 (9th Cir. BAP 1995), we construed § 502(b)(6) as formulating a three-part test for determining what charges are "rent reserved." To be capped, the charge must be: (1)(a) designated as "rent" or "additional rent" in the lease; or (b) provided as the tenant's/lessee's obligation in the lease; (2) related to the value of the property or the lease thereon; and (3) properly classifiable as rent because it is a fixed, regular or periodic charge.

JSJF relies on *In re Pacific Arts Publ'g, Inc.*, 198 B.R. 319, 322–23 (Bankr.C.D.Cal. 1996), in which the court sustained a debtor's objection to a lessor's claim for attorney fees under § 502(b)(6), as did the court in *In re Edwards Theatres Circuit, Inc.*, 281 B.R. 675, 683–84 (Bankr.C.D.Cal. 2002). Those courts appear to have read *McSheridan* as about claims allowance or disallowance, but it is not. Rather, it concerns which portions of a lessor's claim are *limited* by § 502(b)(6).

We are not bound to follow the bankruptcy court decisions in *Pacific Arts* or *Edwards Theatres* as precedent, and do not read § 502(b)(6) to limit lessors' claims only to those items which fall within the cap, as explicated in *McSheridan*. This

follows from the structure of the statute, which we must interpret according to its plain language, *U.S. v. Ron Pair Enters.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), and *U.S. v. Lopez–Perera*, 438 F.3d 932, 933–34 (9th Cir.2006) (to determine plain meaning, a court examines the specific provisions, structure of the law and object and policy). Under § 502(a) a claim is "deemed allowed" unless objected to, and § 502(b) directs the bankruptcy court to allow the claim "except to the extent … if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds" the formula it sets out.

As we explained in *McSheridan*, a lessor may have an un-capped claim for something other than damages resulting from the termination of a lease. If the total claim is greater than the formula would permit, it is in the lessor's interest (and contrary to the debtor's and other creditors') that the cap *not* apply—that is precisely the import of *McSheridan.*

In short, the "landlord's cap" of § 502(b)(6) may limit the amount of a lessor's claim, but is not a criterion for its allowance: it becomes significant only if the claim otherwise allowable under non-bankruptcy law exceeds the cap calculated under the statute.

Disallowance of Wall Street's claim because it was not for rent, which is the gist of the bankruptcy court's ruling, was an error of law. We will REVERSE the order and REMAND for further proceedings. Even were we to affirm all of the bankruptcy court's other rulings, remand would still be necessary for determination of whether the landlord's cap applies to some or all of claim 11 under *McSheridan*, and, if so, what that cap is (the briefs indicate monthly rent of $7,000, and that

approximately $80,000 was due as of surrender of the premises).

## C. *Untimely Claims*

Rule 9006(b) gives the bankruptcy court discretion to allow late-filed or untimely claims if the claimants establish "inadvertence, mistake, or carelessness" or "intervening circumstances beyond the party's control." *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 388, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)

Neither Wall Street nor the attorneys who filed claims 16 and 17, arguably as its agents, submitted any evidence showing excusable neglect permitting the untimely filing of these two claims. Accordingly, there was no abuse of discretion in disallowing these claims. We will AFFIRM the order sustaining JSJF's objections to claims 16 and 17.

## D. *Amended Claims*

Respecting claim 20, the bankruptcy court made no explicit finding on excusable neglect, but, again, Wall Street proffered no evidence of excusable neglect in support of its motion. Absent such a showing, the bankruptcy court did not abuse its discretion in declining to consider claim 20 as a late filed claim.

But the inquiry regarding amendment of claims is narrower:

In the absence of prejudice to an opposing party, the bankruptcy courts, as courts of equity, should freely allow amendments to proofs of claim that relate back to the filing date of the informal claim when the purpose is to cure a defect in the claim as filed or to describe the claim with greater particularity.

*In re Sambo's Restaurants, Inc.*, 754 F.2d 811, 816–17 (9th Cir.1985).

And the Ninth Circuit explicated further in *In re Roberts Farms, Inc.*, 980 F.2d 1248, 1251–52 (9th Cir.1992), a case involving formal proofs of claim:

> We have a long established liberal policy that permits amendments to a proof of claim. The crucial inquiry is whether the opposing party would be unduly prejudiced by the amendment.
>
> To determine whether [debtor] was prejudiced by [the] amendment, the BAP properly relied on factors considered in *In re City of Capitals, Inc.*, 55 B.R. 634, 637 (Bankr.D.Md.1985). The Ninth Circuit BAP adopted these factors in *In re Wilson*, 96 B.R. [257]at 262, [(9th Cir. BAP 1988)] where the court stated "in determining prejudicial effect [we] look to such elements as bad faith or unreasonable delay in filing the amendment, impact on other claimants, reliance by the debtor or other creditors, and change of the debtor's position." *Id.* Applying these factors, we agree with the bankruptcy court and the BAP that [debtor] was not prejudiced by the amendment.

(citations omitted).

■ Claim 11 made reference to the state court judgment. Because the total amount of attorneys fees had not been determined, the amount stated in the claim was incorrect. But the gravamen of the proof of claim was the assertion of all of Wall Street's rights vis-a-vis JSJF arising out of the lease litigation which resulted in the state court judgment, and Claim 20 sought to correct the error and set forth the proper amount of Wall Street's claim. The relation-back did not assert a new theory of relief, and amendment is consistent with the foregoing authorities permitting this sort of relief under similar circumstances.

So the question is prejudice, which the Third Circuit addressed in *In re O'Brien*

*Envtl. Energy, Inc.*, 188 F.3d 116 (3d Cir. 1999). There a creditor holding an unsecured nonpriority claim sought to file a late claim because it had failed to realize that an earlier noticed motion, which had been granted, would preclude its claim. The Third Circuit analyzed prejudice in considering whether to allow a late filed claim, and held, following *Pioneer Investment*, that prejudice must involve more than whether the plan set aside funds to pay the claim at issue, because otherwise *all* amendments after a claims bar date would be prima facie prejudicial:

> There has been no allegation, let alone evidence in the record, that payment of the cure claim ... would pose any problem, actually or legally, or would adversely impact any of appellees. Finally, to the extent [debtor] argues that allowance of this claim would open the floodgates to other future claims against them, [debtor] has not alleged that any other creditor promptly sought to be excused from the March 8 order so as to now be entitled to relief on the basis of excusable neglect.
>
> Considering all of these facts, we cannot see how any of the appellees before us would be prejudiced, in the legal sense, by [having to pay the] claim—*a claim which the debtor had already planned to pay by the terms of its own Plan.*

*O'Brien Envtl.*, 188 F.3d at 128 (emphasis added).

■ We agree that prejudice requires more than simply having to litigate the merits of, or to pay, a claim—there must be some legal detriment to the party opposing. Nothing in JSJF's papers suggests any worsening of its position, or bad faith or unreasonable delay on the part of Wall Street, nor are there any such findings. The equities of the situation favor Wall Street—JSJF's own plan of reorganization, schedules, and disclosure statement

included Wall Street's claim for lease damages, and JSJF knew that Wall Street intended to assert its rights against it. After all, Wall Street's successful assertion of those rights triggered JSJF's bankruptcy filing, and it referenced the judgment by court, case number, and date in its initial timely claim, claim 11.

As the bankruptcy court's disallowance of claim 20 as an amendment to claim 11 was based on the mistaken legal premise that the debtor's having to address the merits of the claim (or pay it) was sufficient prejudice, denying leave to amend was an abuse of discretion. We will REVERSE that disallowance, and REMAND for determination of the claim and the extent to which it may be limited by the § 502(b)(6) cap.

### E. *Reconsideration*

Given our determination regarding claim 11, the appeal of the order denying reconsideration of that claim is moot.

Wall Street did not brief any issues regarding reconsideration of claims 16 and 17; it has thereby waived them. *In re Sedona Inst.*, 220 B.R. 74, 76 (9th Cir. BAP 1998). We will AFFIRM those denials of reconsideration.

Respecting claim 20, to the extent Wall Street's motion for reconsideration is not mooted by the foregoing, that motion, filed within the ten-day period to appeal, is governed by FRCP 59(a),[2] applicable in bankruptcy via Rule 9023. *In re Captain Blythers, Inc.*, 311 B.R. 530, 539 (9th Cir. BAP 2004).

 But bankruptcy proceedings are not exercises in successive approximation, on the model of early modern (World War II and before) naval gunfire, wherein one shoots a salvo, observes the splashes relative to the target, corrects, and shoots again, repeating the process until the target (or one's own ship) is destroyed:

> A motion to reconsider may *not* be used to present a *new* legal theory for the first time or to raise legal arguments which could have been raised in connection with the original motion. Also, a motion to reconsider may *not* be used to *rehash* the same arguments presented the first time or simply to express the opinion that the court was wrong. The standard for granting a motion to reconsider is strict in order to preclude repetitive arguments that have already been fully considered by the court.

> . . . .

As busy as this court is, it nonetheless is required to review the evidence and the applicable law and to render a sound decision the first time that a matter is brought before it. The court does not have the luxury of treating its first decision as a dress rehearsal for the next time. The court is required to "get it right" the first time.

No less is expected of counsel. Initial arguments are *not* to be treated as a dress rehearsal for a second attempt to prevail on the same matter. Counsel is also expected to "get it right" the first time and to present all the arguments

**2.** Which states:

> A new trial may be granted to all or any of the parties and on all or part of the issues
>
> . . .
>
> (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

which counsel believes support its position.

*In re Armstrong Store Fixtures Corp.,* 139 B.R. 347, 349–50 (Bankr.W.D.Pa.1992) (emphasis in original; citations omitted).

Here Wall Street's papers raised no issues which were not, or could not have been, considered at the initial hearing; the motion was properly denied. *In re Agric. Research & Tech. Group, Inc.,* 916 F.2d 528, 542 (9th Cir.1990); and *In re Negrete,* 183 B.R. 195, 197 (9th Cir. BAP 1995), *aff'd,* 103 F.3d 139 (9th Cir.1996) (table). We will AFFIRM the denial of reconsideration with respect to claim 20.

## VI. CONCLUSION

Because the bankruptcy court's ruling was predicated on a mistaken legal premise, it was an abuse of discretion to disallow claim 11 under § 502(b)(6); to the extent the order of 20 December 2004 disallows that claim, we REVERSE.

As claims 16 and 17 were untimely and no excusable neglect was shown, we AFFIRM the disallowance of those claims and of claim 20 on that ground, but REVERSE the disallowance of claim 20 as an amendment to claim 11, and REMAND. If Wall Street prevails, the bankruptcy court will need to determine whether and to what portion of its claim the § 502(b)(6) cap applies.

Finally, to the extent they are not mooted by our dispositions concerning the underlying claims, we AFFIRM the denials of reconsideration.