

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: <br> MED EQUITY, LLC, <br>         Debtor. | BAP No. CC-21-1247-GFS <br><br> Bk. No. 2:21-bk-12447-ER |
| RANDY ROSE, <br>         Appellant, <br> v. <br> MED EQUITY, LLC, <br>         Appellee. | **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Central District of California
Ernest M. Robles, Bankruptcy Judge, Presiding

Before: GAN, FARIS, and SPRAKER, Bankruptcy Judges.

## INTRODUCTION

Randy Rose appeals the bankruptcy court's order sustaining the objection to his proof of claim filed by chapter 11[1] debtor Med Equity, LLC ("Debtor"). Rose's proof of claim was based on his state-court suit against

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of

Debtor and others for alleged wrongdoing in a real estate development deal. The bankruptcy court determined that even if the allegations in the complaint were true, they at most stated a claim for relief in favor of 871 Linda Flora LLC ("Linda Flora")—an entity of which Rose was a member—but not in favor of Rose in his individual capacity. The court determined that Rose filed the claim as an individual creditor and did not properly assert a derivative claim.

The bankruptcy court further held that leave to amend the claim was not warranted because amendment could not overcome the fact that the claim was filed by the wrong party, and even if a claim filed by Linda Flora could be deemed an amendment to Rose's claim, such amendment would prejudice Debtor.

We agree that Rose did not state viable individual claims against Debtor. And we agree that Rose did not properly file a derivative claim on behalf of Linda Flora. But the facts he alleged could support a claim by Linda Flora, and we see no undue prejudice to Debtor or other creditors by allowing Rose to amend the proof of claim to clarify its derivative nature. Furthermore, because Linda Flora is the real party in interest for those claims, the court erred by holding that Linda Flora cannot be joined or substituted as creditor. Accordingly, we AFFIRM the court's decision to disallow the claim but REVERSE its decision to deny leave to amend. Accordingly, we REMAND with instruction to permit Rose to amend the

---

Civil Procedure.

claim or to permit Linda Flora to join or substitute as the real party in interest.

## FACTS

### A.    Prepetition Events

In late 2016, Rose met Howard Royal, and the two agreed to pursue a plan to purchase, renovate, and sell a parcel of real property. According to Rose, Royal had a general contractor and another investor in mind. They located a suitable property on Linda Flora Drive (the "Property") and outlined a deal under which Rose would contribute funds toward the purchase of the Property and Royal would contribute project management services. The parties intended to demolish the existing home and construct a larger home on the Property.

Royal then contacted Joshua Pukini to obtain financing for the project. Pukini had authority to act on behalf of Debtor and other entities.[2] He agreed to arrange purchase financing and an investment of approximately $200,000 for plans, permits, and other costs. Rose alleges that Pukini also promised to obtain construction financing after the Property was purchased.

---

[2] Pukini was the managing member of Debtor, and The Joshua R. Pukini Trust owned 80% of the membership interests in Debtor. Pukini was also an officer and director of Calpac Management LLC ("Calpac"), which brokered the loans for the project, and the managing member of Luna Construction Management LLC ("Luna Construction"), the contractor for the project.

In March 2017, Rose and Royal formed Linda Flora and purchased the Property for approximately $2,500,000 with Linda Flora taking title.[3] As part of the purchase, Calpac brokered two secured loans in the amounts of $1,650,000 and $350,000. Rose contributed approximately $520,000 toward the purchase and Debtor contributed approximately $140,000 to cover an escrow shortfall.

After purchasing the Property, Linda Flora and Debtor entered into a written joint venture agreement (the "JVA") with the purpose to "acquire, design, permit the renovation or build and/or the completion of permitted construction, and immediately resell" the Property. Rose and Royal signed the JVA on behalf of Linda Flora, and they forwarded the document to Pukini to sign on behalf of Debtor.

The JVA provides for Linda Flora to contribute $520,000 toward the purchase of the Property, and for Debtor contribute $300,000, consisting of: (1) $140,000 toward the purchase of the Property; and (2) $160,000 for plans, permits, and other costs. Under the JVA, Debtor is entitled to a preferred return on its investment and 25% of net profits upon sale or disposition of the Property. The JVA also provides for Debtor to receive a third-position deed of trust, governed by the terms of the JVA, and for Debtor and Linda Flora to jointly manage the project.

---

[3] Rose owned 55% of the membership interests in Linda Flora, and Mag Equities, LLC ("Mag Equities"), an entity owned by Royal, owned the remaining 45%.

4

In April 2017, Linda Flora granted Debtor a deed of trust to secure its obligations under the JVA. According to Rose, Pukini and Debtor stated that the amount due under the deed of trust would be repaid only after the Property was sold.

Later in 2017, the relationship between Rose and Royal began to deteriorate. Rose alleges that Royal restricted his access to Linda Flora's transactions and excluded him from communications related to the Property. He claims that Royal unilaterally made changes to the construction plan and conspired with Pukini and Debtor to complete construction, without insurance, using undocumented labor, and using Luna Construction, which Rose asserts was an unlicensed contractor.

In late 2017, Pukini took steps to take over management of the project in lieu of foreclosing Debtor's deed of trust. He sent Rose and Royal a construction contract and a corporate resolution which purported to amend Linda Flora's operating agreement to give Debtor management control of Linda Flora and to give Mag Equities day-to-day control over construction management. The resolution also authorized Debtor to raise or invest additional capital and altered the distribution of proceeds from the project.

Rose contends that he did not approve the corporate resolution and instead demanded an end to all work at the Property. Notwithstanding his demand, Rose alleges that Pukini and Royal fraudulently obtained a

5

demolition permit and, on January 4, 2018, Debtor recorded a notice of default on the deed of trust.

According to Rose, he withdrew Linda Flora's assent to the JVA by January 2018, before receiving a signed copy of the JVA. He claims that Pukini withheld his signature on the JVA until after Rose commenced the state court litigation, and he accuses Pukini of forging signatures on construction contracts and entering into contracts on behalf of Linda Flora without authority.

In June 2018, Debtor recorded a notice of trustee's sale which indicated an amount due of $1,187,998.01. Rose contends that the increased amount due on the deed of trust was for payments to Pukini and Luna Construction for unauthorized work. Debtor foreclosed in July 2018 and took title to the Property through a credit bid.

## B. Rose's State Court Complaint

In 2018, Rose filed suit in California state court against Debtor, Pukini, Royal, Mag Equities, Calpac, Luna Construction, and Linda Flora. In his second amended complaint ("SAC"), Rose asserted eleven causes of action, including negligence, fraud, breach of fiduciary duty, breach of contract, and wrongful foreclosure.[4] The SAC indicates that the suit was brought in Rose's individual capacity and as a derivative action on behalf of Linda Flora.

---

[4] Rose also asserted claims to quiet title, for involuntary dissolution of Linda Flora, for accounting and declaratory relief, and for assault and battery against Royal.

6

Rose alleged generally that Pukini, Debtor, and Royal conspired to exclude Rose and Linda Flora from the project and to take the Property in violation of the agreements and promises between the parties. He alleged that Debtor and all other corporate defendants were sham entities which should be disregarded, and all defendants should be held jointly and severally liable. Regarding the specific causes of action against Debtor or Pukini, he alleged as follows:

## 1. Negligence

Rose claimed that all defendants owed him a duty to manage the Property with ordinary care and skill. He contended that Pukini and Debtor breached their duty by failing to advise Rose of the true nature of the loans, by failing to properly manage construction and allowing demolition to occur without authority, and by foreclosing on the Property.

## 2. Fraud

Rose asserted that Pukini, with the other defendants conspiring and ratifying his conduct, made intentional misrepresentations about obtaining a construction loan, the terms of repayment on the loans, and his intent to continue demolition and construction without authority.

Rose alleged that Pukini, individually and on behalf of Debtor, made material misrepresentations that construction would be through licensed contractors, that no payments would be due on Debtor's deed of trust until the Property was sold, and that Debtor's deed of trust was only security for Pukini's investment in the project. He claimed that in December 2017,

Pukini and Debtor promised that no demolition would go forward, when they planned the opposite.

### 3. Breach of Fiduciary Duty

Rose maintained that Pukini and Calpac breached fiduciary duties owed to Linda Flora as its mortgage broker. He asserted that Linda Flora disavowed the JVA and Royal and Pukini breached fiduciary duties under a prior oral agreement by foreclosing and acquiescing to foreclosure of the Property. Alternatively, if the court determined that the JVA was enforceable, Rose alleged that all acts of Royal were on behalf of Mag Equities and all acts of Pukini were on behalf of Debtor.

### 4. Breach of Contract

Although he stated that Pukini and Debtor were subject to his breach of contract claims, Rose did not allege any conduct by Pukini or Debtor constituting a breach of contract. Instead, he asserted that Royal and Mag Equities breached the terms of Linda Flora's operating agreement by failing to perform reasonable construction management services, and Luna Construction breached the construction contract with Linda Flora.

### 5. Wrongful Foreclosure and Quiet Title

Rose claimed that Pukini and Debtor, with the consent of Royal and Mag Equities, fraudulently and illegally foreclosed on the Property. He alleged that Pukini and Debtor promised that the deed of trust was merely a way to ensure their priority of proceeds after the sale of the Property and no payments would be due prior to a sale. Rose also contended that Debtor

8

stated a false amount due on the deed of trust, and he sought to quiet title in the Property against all adverse claims of defendants.

### 6. Involuntary Dissolution, Accounting, and Declaratory Relief

The remaining claims involving Debtor and Pukini pertained to the alleged mismanagement of Linda Flora and the joint venture under the JVA. Rose sought judicial dissolution of Linda Flora, an accounting of all funds related to the Property, and declaratory relief that: (1) the true members of Linda Flora were Rose and Royal; and (2) the true members of the joint venture were Rose, Royal, and Pukini.

## C. The Bankruptcy and Rose's Proof of Claim

After Rose filed his state-court suit, Debtor obtained a $3,000,000 line of credit from Saman Jilanchi, Qwan International Investments, LLC, and Qwan Capital (collectively the "Qwan Group"), which it used to pay existing senior loans and develop the Property. A dispute arose between Debtor and Qwan Group, and Qwan Group initiated foreclosure proceedings. Debtor filed suit to enjoin the foreclosure, and in March 2021, it filed a chapter 11 petition, electing to proceed under subchapter V.

In the bankruptcy case, Rose filed a proof of claim indicating an unsecured claim for $700,000 based on the state court lawsuit. He listed "Randy Rose" as creditor and attached an explanation of the claim stating:

> This claim relates to a lawsuit filed in the Los Angeles County Superior Court, Case No. BC697499. In essence, [Debtor], aided by other defendants, defrauded Mr. Rose into investing his life savings in a property development project.

9

Defendants intentionally underfunded the project and fraudulently created a lien on the real property as a means to seal [sic] Mr. Rose's property interest, investment and funds. [Debtor] in violation of the Joint Venture Agreement with Mr. Rose, foreclosed on the property, effectively stealing their joint venture partner's funds and interest.

Attached is a copy of the Second Amended Complaint that was filed in the action which supports the claim.

In June 2021, Debtor filed its chapter 11 plan, proposing to sell the Property for an amount which it estimated would pay administrative and secured claims in full and pay 91% of unsecured claims, if allowed.[5] After filing its plan, Debtor objected to the claim filed by Qwan Group, and in July 2021, the parties stipulated to allow the claim in the amount of $3,800,000. The bankruptcy court entered an order approving the settlement on October 19, 2021.

In September 2021, Debtor objected to Rose's claim and argued that even if the court accepted all allegations in the SAC, those allegations did not state a cause of action against Debtor. Debtor argued that because the Property was owned by Linda Flora—and the JVA was between Debtor and Linda Flora, not Rose—none of the claims related to management or disposition of the Property belonged to Rose. And because Rose did not allege facts to support a contractual relationship or duty owed by Debtor,

---

[5] The Plan proposes to treat two classes of creditors: Class One secured claims, consisting of a property tax claim, Qwan Group's claim, and a claim asserted by Pukini, and Class Two unsecured claims, consisting of Rose's claim and a claim asserted by

he could not state a viable claim against Debtor in his individual capacity on any of his asserted causes of action in the SAC.

Rose opposed the objection and maintained that the SAC supported his individual claim for negligence because Debtor owed him a duty to avoid causing injury. Rose argued that he stated derivative claims for negligence, breach of contract, wrongful foreclosure, accounting, and declaratory relief, but he did not address Debtor's objection to his claims for fraud, breach of fiduciary duty, quiet title, or dissolution. He contended that because he alleged that Debtor is the alter ego of Pukini, Debtor could be liable for Rose's individual claims against Pukini. Finally, he argued that if the bankruptcy court sustained the objection, it should grant leave to amend the proof of claim.

In its reply, Debtor argued that Rose did not assert a derivative claim because the claim form listed as creditor "Randy Rose," and if Rose had truly filed a derivative claim, he would list as creditor "Randy Rose, derivatively on behalf of [Linda Flora]." Debtor noted that the attachment to the proof of claim described only an individual claim, and any payment on the claim would go to Rose and not Linda Flora, which further evidenced its individual nature. Debtor also argued that because the SAC did not include allegations that Rose made a demand on Linda Flora to pursue the action, Rose could not meet the threshold requirements for a derivative claim under state law.

---

Luna Construction.

11

Finally, Debtor maintained that Rose should not be permitted to amend the claim because the asserted claims belong to Linda Flora, and Rose was prohibited from stating a new claim after the claims bar date. Because Linda Flora did not file a timely claim on its own behalf, Debtor argued that it should not be allowed to amend Rose's claim.

## D. The Bankruptcy Court's Ruling

The bankruptcy court issued a detailed tentative decision, which it adopted as its final ruling, sustaining Debtor's objection and disallowing Rose's claim in its entirety. The court reasoned that the claim form and attachment listed Rose as the current creditor and described a claim in which Rose's interest in the property was wrongfully taken. The court determined that nothing in the claim or the SAC indicated that Rose sought a derivative claim on behalf of Linda Flora.

Assuming the truth of the allegations in the SAC, the bankruptcy court reasoned that it supported a potential claim by Linda Flora, but not by Rose. The court held that because Rose alleged that Linda Flora entered into the JVA with Debtor—and that agreement permitted Debtor to record the deed of trust against the property—any claim arising from the foreclosure or mismanagement belonged to Linda Flora.

The court determined that amendment to the claim could not overcome the fact that it was filed by the wrong party. And, assuming a claim filed by Linda Flora could be deemed an amendment to Rose's claim, which the court doubted, it would not be allowable because of prejudice to

12

Debtor. The bankruptcy court found that, because Debtor executed the settlement with Qwan Group after the claims bar date, it would be prejudiced by having to defend against a claim asserted by an entirely new entity.

The court entered its written order disallowing Rose's claim and denying leave to amend. Rose timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court err by sustaining Debtor's objection to Rose's claim?

Did the bankruptcy court err by denying leave to amend the claim?

## STANDARDS OF REVIEW

In the claim objection context, we review the bankruptcy court's legal conclusions de novo and its findings of fact for clear error. *Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000). Because the bankruptcy court determined that Rose could not state a claim for relief as a matter of law, we review the decision de novo. Under de novo review, "we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

We review the bankruptcy court's decision to deny a motion to amend a claim for abuse of discretion. *Wall St. Plaza, LLC v. JSJF Corp. (In re*

*JSJF Corp.)*, 344 B.R. 94, 99 (9th Cir. BAP 2006), *aff'd and remanded*, 277 F. App'x 718 (9th Cir. 2008). A bankruptcy court abuses its discretion if it applies an incorrect legal standard or its factual findings are illogical, implausible, or without support in the record. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

## DISCUSSION

### A.   Legal Standards Governing Claim Objections and Claim Amendments

Pursuant to § 502(a), a claim filed under § 501 is deemed allowed unless a party in interest objects. If an objection is made, the bankruptcy court must determine the amount of the claim as of the petition date and allow the claim except to the extent it is disallowable under the provisions of § 502.

Section 502(b)(1) requires the bankruptcy court to disallow a claim that is unenforceable against the debtor or the property of the debtor under applicable law. Because Rose asserts state law causes of action, the bankruptcy court must disallow the claim if it is unenforceable under state law, and Debtor may raise any state law defenses to the claim. *Durkin v. Benedor Corp. (In re G.I. Indus.)*, 204 F.3d 1276, 1281 (9th Cir. 2000); *see also Johnson v. Righetti (In re Johnson)*, 756 F.2d 738, 741 (9th Cir. 1985) ("[I]n proof of claim litigation under 11 U.S.C. § 502(b)(1), the validity of the claim is determined under state law.").

14

The Ninth Circuit has a "long established liberal policy that permits amendments to a proof of claim." *Roberts Farms Inc. v. Bultman (In re Roberts Farms Inc.)*, 980 F.2d 1248, 1251 (9th Cir. 1992). The bankruptcy court, in the absence of prejudice to an opposing party, should freely allow claim amendments "when the purpose is to cure a defect in the claim as filed or to describe the claim with greater particularity." *Sambo's Rests., Inc. v. Wheeler (In re Sambo's Rests., Inc.)*, 754 F.2d 811, 816-17 (9th Cir. 1985).

## B. The Bankruptcy Court Properly Disallowed Rose's Individual Claim Against Debtor.

On appeal, Rose argues that the bankruptcy court erred by assuming the JVA was the operative agreement because he alleged in the SAC that Linda Flora withdrew its assent before Debtor signed the document. He contends that a prior oral agreement between Rose, Royal, and Pukini governs the joint venture. Rose argues that he was personally injured, and because the SAC includes allegations that Debtor conspired with the other defendants, he has an enforceable claim against Debtor for coconspirator liability.[6]

Based on Rose's factual allegations, we see no legal basis for his assertion that the JVA is not enforceable against Linda Flora. Rose alleged only that he did not receive a copy signed by Debtor, but he clearly states that Linda Flora entered into the JVA with Debtor. Rose and Royal signed

---

[6] Rose does not argue on appeal that Debtor is liable for claims against Pukini based on an alter ego theory. Consequently, he has waived the issue, and we do not

15

the JVA on behalf of Linda Flora in April 2017, and Debtor contributed funds in reliance on the JVA. After signing the JVA, Rose and Royal also signed the deed of trust securing Debtor's investment, which was granted by Linda Flora pursuant to the JVA.

This is sufficient to form an enforceable contract under California law. *See Benard v. Walkup*, 272 Cal. App. 2d 595, 602 (1969) ("It is well established that the receipt and acceptance by one party of a writing signed by the other only, and purporting to embody all the terms of a contract between the two, binds the acceptor as well as the signer, to the terms of the writing."); Cal. Civ. Code § 3388 ("A party who has signed a written contract may be compelled specifically to perform it, though the other party has not signed it, if the latter has performed, or offers to perform it on his part . . . .").

Assuming Linda Flora had a valid basis to rescind the JVA, it had to do more than merely withdraw assent—it had to give notice of recission and restore to Debtor its investment in the Property. *See* Cal. Civ. Code § 1691; *Denevi v. LGCC*, 121 Cal. App. 4th 1211, 1220 (2004) ("[T]he law requires one who has been defrauded into entering a contract to choose either to affirm or rescind the contract. Rescission consists of restoration by the plaintiff of any benefits received under the contract, coupled with restitution to the plaintiff of the consideration which he gave." (cleaned up)). Rose makes no allegation that Linda Flora returned Debtor's

address it. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).

16

investment and the facts alleged in the SAC do not support his notion that the JVA was unenforceable merely upon Linda Flora's disavowal.

Rose is not a party to the JVA; the duties owed by Debtor under the JVA are to Linda Flora, not Rose. Thus, Rose does not properly assert individual claims based on mismanagement of the project, breaches of the JVA, or foreclosure of the Property.

But even if we accept Rose's argument that the JVA is unenforceable and a prior oral agreement between the individuals governs the joint venture, he still does not allege viable individual claims. The SAC contains no facts to support a conclusion that Debtor owed any duty to Rose or had a sufficient relationship with Rose to form the basis of individual claims against Debtor. In other words, claims for injury sustained by Rose individually are based on a purported agreement between the individuals and are not properly asserted against Debtor, while claims for injury caused by Debtor's actions are necessarily based on the JVA or deed of trust and, consequently, are properly asserted only by Linda Flora.

Rose may have viable individual claims against Pukini or Royal, which we do not decide, but for several reasons his allegations of conspiracy are insufficient to impute liability to Debtor. First, Rose did not raise the issue of conspiracy in his opposition to Debtor's claim objection, and therefore waived the issue. *See Smith*, 194 F.3d at 1052 ("As a general rule, we will not consider arguments that are raised for the first time on appeal."). Second, the only allegations of conspiracy made in the SAC

17

pertain to the fraud claim, which Rose conceded by not contesting Debtor's objection to his claim based on fraud.

Finally, civil conspiracy "is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994). Tort liability arising from conspiracy requires that the coconspirator be "legally capable of committing the tort, i.e., that he or she owes a duty to plaintiff recognized by law and is potentially subject to liability for breach of that duty." *Id.* at 511. Conspiracy cannot create a duty. *Id.* at 514. "It allows tort recovery only against a party who already owes the duty and is not immune from liability based on applicable substantive tort law principles." *Id.* Because Rose does not allege facts to support a legal duty owed by Debtor to Rose, Debtor cannot be liable as a coconspirator.

The bankruptcy court did not err by sustaining Debtor's objection to Rose's individual claims.

**C.  The Bankruptcy Court Did Not Err by Determining that Rose Failed to Assert Derivative Claims.**

**1.  Derivative Claims Under California Law**

An LLC has a legal existence separate from its members. *See Sirott v. Super. Ct.*, 78 Cal. App. 5th 371, 381 (2022). "The principles governing derivative actions in the context of corporations apply to limited liability

companies and limited partnerships." *Schrage v. Schrage*, 69 Cal. App. 5th 126, 150 (2021). Members do not have a direct cause of action or right of recovery against those who have injured the LLC. *See Sirott*, 78 Cal. App. 5th at 381.

Under California law, a member of an LLC who satisfies certain statutory requirements may bring a derivative action on behalf of the LLC. An action is derivative "if the gravamen of the complaint is injury to the [entity], . . . or it seeks to recover assets for the [entity] or prevent the dissipation of its assets." *Grosset v. Wenaas*, 42 Cal. 4th 1100, 1108 (2008). However, if the injury is to the plaintiff individually, and not to the LLC, "as where the action is based on a contract to which he is a party, or on a right belonging severally to him, or on a fraud affecting him directly, it is an individual action." *Schrage*, 69 Cal. App. 5th at 150 (quoting *Sutter v. Gen. Petroleum Corp.*, 28 Cal. 2d 525, 530 (1946)).

If a member is successful on a derivative action, the LLC is the only party that benefits from any recovery; "the [members] derive no benefit except the indirect benefit resulting from a realization upon the [LLC's] assets." *Grosset*, 42 Cal. 4th at 1108 (cleaned up); *see also Cotton v. Expo Power Sys., Inc.*, 170 Cal. App. 4th 1371, 1380 (2009) ("If successful, a derivative claim will accrue to the direct benefit of the corporation and not to the stockholder who litigated it." (citations omitted)). A derivative claim is a property right that belongs to the LLC, not its members. *See Grosset*, 42 Cal. 4th at 1108.

To bring a derivative claim on behalf of an LLC, a member must satisfy California Corporations Code § 17709.02. That statute requires the plaintiff to be a member of the LLC at the time of the alleged injury and remain a member throughout the litigation of the derivative claim. *Sirott*, 78 Cal. App. 5th at 381-82. The member must also allege with particularity its efforts to demand that the LLC pursue the action or its reasons for not doing so. Cal. Corp. Code § 17709.02(a)(2). Finally, the member must inform the LLC or its managers in writing of the ultimate facts of each cause of action or deliver to the LLC or its managers a copy of the complaint which the member proposes to file. *Id.*

### 2. Rose Did Not Properly Assert Derivative Claims on Behalf of Linda Flora.

The gravamen of the SAC is that the defendants mismanaged the project and committed breaches stemming from the JVA which led to Linda Flora losing the Property. The alleged injury is to Linda Flora as a member of the joint venture, or as owner of the Property. As the bankruptcy court recognized, the allegations in the SAC support potential claims by Linda Flora.

But the proof of claim clearly indicates that "Randy Rose" is the creditor, and the attachment describes injuries only to Rose in his individual capacity. Rose suggests that he can assert derivative claims on behalf of Linda Flora which inure to his benefit, and which give him a personal claim against Debtor. He argues that under the holding of *Jara v.*

20

*Suprema Meats, Inc.*, 121 Cal. App. 4th 1238 (2004), he can maintain a direct action for injuries to Linda Flora when it is equitable to do so.

*Jara* does not support Rose's position. In *Jara*, the California Court of Appeal held that a minority shareholder could assert an individual claim for breach of fiduciary duty against majority shareholders "which resulted in the majority stockholders retaining a disproportionate share of the corporation's ongoing value." *Id.* at 1257-58 (citation omitted). The court determined that the "gravamen of [plaintiff's] complaint is that he was deprived of a fair share of the corporation's profits as a result of defendants' generous payment of executive compensation to themselves." *Id.* at 1258. Consequently, the claim was not derivative; it involved an injury which fell within the scope of allowable individual actions under existing precedent.

The court found additional support for its decision in "the absence of any policy considerations favoring derivative actions in the procedural context of the present case."[7] *Id.* It applied existing precedent to distinguish individual and derivative claims and did not hold that equitable considerations can cause a derivative claim to inure to the benefit of an

---

[7] The policy considerations including "prevent[ing] a multiplicity of actions by each individual shareholder," "protect[ing] the creditors who have first call on the corporate assets," "shielding the corporation from meritless lawsuits," "encouraging the intracorporate resolution of disputes," and "protecting managerial freedom," favored requiring such actions to be brought derivatively. *Id.* at 1258-59. Because *Jara* involved only one minority shareholder and the defendants "constitute[d] the entire complement of the board of directors and all the corporate officers," policy concerns did not favor

individual. At best, *Jara* might support Rose's ability to assert individual claims against Mag Equity, the other member of Linda Flora, but it offers no support for Rose's ability to assert claims for injuries to Linda Flora caused by others.

Whether brought derivatively, or directly by Linda Flora, the claims for injury based on the JVA or the deed of trust belong to Linda Flora and any recovery on such claims would necessarily be to Linda Flora. Because Rose filed the proof of claim as an individual creditor, the bankruptcy court correctly held that Rose did not properly assert a derivative claim.[8]

## D. The Bankruptcy Court Abused Its Discretion by Denying Leave to Amend the Claim.

In determining whether to allow a claim amendment, the critical inquiry is whether the opposing party would be unduly prejudiced. *In re Roberts Farms, Inc.*, 980 F.2d at 1251. To establish undue prejudice, "we look to such elements as bad faith or unreasonable delay in filing the amendment, impact on other claimants, reliance by the debtor or other

---

requiring the breach of fiduciary duty claim to be brought derivatively. *Id.* at 1259.

[8] Debtor additionally argues that Rose failed to state a derivative claim because the SAC does not include the requisite allegations of demand on Linda Flora. The SAC arguably includes facts that explain why Rose did not make a demand on Linda Flora to pursue the claims. But we need not decide the issue because, as discussed below, Rose should be permitted to amend the claim. *See In re Sambo's Rests., Inc.*, 754 F.2d at 817 (holding that in the absence of prejudice, bankruptcy courts should freely allow amendments to proofs of claim "when the purpose is to cure a defect in the claim as filed or to describe the claim with greater particularity").

creditors, and change of the debtor's position." *In re JSJF Corp.*, 344 B.R. at 102 (cleaned up).

Here, the bankruptcy court held that amendment would be prejudicial to Debtor because Debtor filed its motion for approval of its compromise with Qwan Group after the claims bar date elapsed, and thus, changed its position. The court further concluded that allowing Linda Flora to be added as creditor would prejudice Debtor because it would have to defend against a claim asserted by a new entity. We disagree.

### 1.    The Bankruptcy Court Erred by Determining that Amendment Would Cause Undue Prejudice.

Debtor may have changed its position by settling its claim objection with Qwan Group, but that is not relevant to allowing an amendment to Rose's claim. Section 502(a) provides that a proof of claim is deemed allowed unless a party in interest objects. At the time Debtor filed its motion for approval of the settlement with Qwan Group, it had not objected to Rose's claim. And the court approved the settlement before it considered the objection to Rose's claim. To the extent that Debtor changed its position, it did so in reliance on a claim that was deemed allowed, not a disallowed claim in need of amendment.

We see no legal detriment to Debtor in having to defend a claim asserted by, or on behalf of, Linda Flora. Debtor was aware of the operative facts giving rise to claims in favor of Linda Flora. It litigated the complaint in state court, and even acknowledged in its objection to Rose's claim that:

23

"In the State Action, Rose seeks damages individually and derivatively on behalf of [Linda Flora.]" Allowing Rose to amend the claim to clarify its derivative nature would not "introduce a new claim in disguise." *See In re Sambo's Rests., Inc.*, 754 F.2d at 817. It would merely specify the derivative nature of an existing proof of claim.

And it makes little difference that the claims bar date had passed prior to Debtor's claim objection. Amendments to proofs of claim are liberally allowed and can relate back to the original claim when the amended claim is based on the same set of operative facts. *See In re Roberts Farms Inc.*, 980 F.2d at 1251-52.

Finally, the record does not evidence any prejudice to other creditors. Under Debtor's plan, secured creditor Qwan Group will be paid in full and is unaffected by allowance or disallowance of an unsecured claim by Linda Flora. According to the bankruptcy court docket, the Property has not been sold and Debtor's plan has not been confirmed. Thus, we see no prejudice caused by a delay in distributions to insider Luna Construction, the only other unsecured creditor.

### 2. Linda Flora May Be Joined as a Real Party in Interest.

Whether Linda Flora is substituted as creditor or Rose amends the proof of claim to seek a derivative claim, Linda Flora is the creditor, and any recovery will inure to its benefit. *See Grosset*, 42 Cal. 4th at 1108. The fact that Debtor may have to defend against a claim owned by Linda Flora does not constitute prejudice. *See In re JSJF Corp.*, 344 B.R. at 102

24

("[P]rejudice requires more than simply having to litigate the merits of, or to pay, a claim—there must be some legal detriment to the party opposing.").

Moreover, adding Linda Flora to the proof of claim is not a typical amendment to a claim, but a joinder of a real party in interest. If the claims against Debtor properly belong to Linda Flora, as the bankruptcy court held, it is the real party in interest.

Claim objections are contested matters subject to Rule 9014. *United States v. Levoy (In re Levoy)*, 182 B.R. 827, 834 (9th Cir. BAP 1995). Pursuant to Civil Rule 17, made applicable to contested matters by Rules 9014(c) and 7017, "[a]n action must be prosecuted in the name of the real party in interest." A party without the legal right to enforce an obligation is not a real party in interest. *See Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008). However, under Civil Rule 17(a)(3), "the court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action."

The bankruptcy court erred by denying leave to amend the proof of claim to clarify that Rose seeks derivative claims and by ruling that Linda Flora cannot be joined or substituted as creditor.

## CONCLUSION

Based on the foregoing, we AFFIRM the bankruptcy court's order disallowing Rose's individual claim and his derivative claim. We REVERSE

25

the bankruptcy court's denial of leave to amend and REMAND to permit Rose to amend his claim to assert a derivative claim in accordance with state law, or for Linda Flora to join or substitute as creditor.